UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: ADC Telecommunications
ERISA Litigation.

MEMORANDUM OPINION
AND ORDER
Civil No. 03-2989 ADM/FLN

---

Thomas V. Seifert, Esq., Head, Seifert & Vander Weide, Minneapolis, MN, Joseph H. Meltzer, Esq., Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Edward W. Chang, Esq., Schiffrin & Barroway, LLP, Radnor, PA, John G. Emerson, Esq., Emerson Poynter, LLP, and Thomas Hart, Esq., Slevin & Hart, P.C., on behalf of Plaintiffs.

Stephen P. Lucke, Esq., Heather J. Klaas, Esq., Andrew J. Holly, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On July 12, 2005, oral argument before the undersigned United States District Judge was heard on Plaintiff James A. Carnahan ("Carnahan") and proposed class representative Michael Anderson's ("Anderson") (collectively, "Plaintiffs") Motion to Certify Class [Docket No. 110] and Motion to Appoint an Additional Class Representative [Docket No. 105]. This Order will also address Defendant ADC Telecommunications, Inc.'s[1] ("ADC") Motion to Strike Plaintiffs' Evidence [Docket No. 158], Plaintiffs' Appeal [Docket No. 142] of Magistrate Judge Franklin L. Noel's June 13, 2005 Order [Docket No. 139] and Defendant's Motion for Sanctions [Docket No. 166]. For the foregoing reasons, Plaintiffs' Motion to Certify Class is granted in part and

---

[1] "ADC" will refer collectively to ADC Telecommunications, Inc., as well as numerous individual defendants named in this lawsuit, including: Richard R. Roscitt, John J. Boyle, III, James C. Castle, Charles D. Yost, Robert Annunziata, Larry W. Wangberg, Charles T. Roehrick, Laura Owen, Gokul Hemmady, Jeffrey D. Pflaum, Patricia A. Gilroy, Debra L. Raths, ADC Telecommunications Retirement Savings Plan Committee, William Cadogan, Robert E. Switz, B. Christine Johnson, John A. Blanchard, III, Jean-Pierre Russo, John D. Wunsch, American Express Trust Co., John W. Sidgmore, Thomas E. Holloran, Allen E. Ross, Mark Veldey, and Shelby Nelson.

denied in part, Plaintiffs' Motion to Appoint an Additional Class Representative is denied, Defendant's Motion to Strike is denied, Plaintiffs' Appeal is denied, and Defendant's Motion for Sanctions is denied.

## II. BACKGROUND

In the Amended Consolidated Complaint ("Complaint") [Docket No. 69], Plaintiffs allege Defendant breached fiduciary duties owed to participants of the ADC Telecommunications, Inc. Retirement Savings Plan ("the Plan"). Specifically, Plaintiffs claim Defendant erred in allowing participant contributions and the Plan's assets to be invested in ADC stock during the proposed class period. Plaintiffs further contend Defendant knew or should have known this investment was imprudent due to non-public accounting irregularities and operational problems at ADC. Plaintiffs' claims are predicated on the Employee Retirement Income Security Act ("ERISA") §§ 409, 502.

Plaintiff Carnahan has been proposed by Plaintiffs as the class representative. Carnahan was employed by Defendant as a maintenance mechanic at Defendant's Le Sueur, Minnesota facility from November 1999 to May 2002. In April 2002, after Defendant experienced financial difficulties, Carnahan believed his job with Defendant would likely be terminated. Carnahan posted an ADC memo from CEO Rick Roscitt on a Yahoo! internet message board relating to ADC. The memo previewed future company actions, commented on the effect of reduced spending in the telecommunications industry, and predicted cost reductions. Carnahan Dep. (Lucke Aff. [Docket No. 126] Ex. 1) at 32, 43-49, Ex. 8 (Lucke Aff. Ex. 3). ADC discovered Carnahan posted the memo, and terminated him for violation of its Business Conduct Policy. Id. at Ex. 12 (Lucke Aff. Ex. 7). Carnahan, in his deposition, admitted that he violated company

policy. Id. at 49. Following his termination, Carnahan hired an attorney to consider the possibility of filing a suit against ADC for age discrimination and slander, although he chose not to proceed with that lawsuit. Id. at 57-62; Exs. 11-13 (Lucke Aff. Exs. 6-8).

Plaintiff Anderson is a former engineer in the Broadband Wireless Access division of ADC. In the spring of 2001, he received notice that he would be terminated by ADC. Anderson was notified that a condition to receiving his severance package was the signing of a waiver and release form that he would not bring suit against ADC. Friese Decl. [Docket No. 127] Exs. 2, 7. On June 15, 2001, Anderson received his severance package. Rein Decl. [Docket No. 128] Ex. 1. Defendant, however, has not produced a copy of the signed release form Anderson allegedly signed before he received his severance package.

## III.  DISCUSSION

**A.     Motion to Certify Class**

For class certification to be appropriate, plaintiff must first establish the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23(a). Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the class (adequacy). Id. Upon satisfying the four requirements of Rule 23(a), a party seeking class certification must also demonstrate that the action falls within one of the three categories of Fed. R. Civ. P. 23(b). Here, Defendant does not challenge numerosity or commonality; therefore, only typicality and adequacy will be examined.

### 1. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This requirement is satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." Lockwood Motors v. General Motors Corp., 162 F.R.D. 569, 575 (D. Minn. 1995). "Thus a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Id. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995). Since the typicality inquiry often merges with the commonality analysis, the Eighth Circuit has given typicality an "independent meaning" by holding that Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the [class representative]." Paxton v. Union Nat. Bank, 688 F.2d 552, 562 (8th Cir. 1982) (citation omitted).

Plaintiffs have proposed Carnahan as the class representative, arguing that his claims against ADC are typical in three respects to those of the other class members. First, the class members are or were employees of ADC; second, each class member was a participant of the Plan during the class period; and third, each class member had part of his or her individual Plan investment portfolio invested in ADC stock during the class period. Plaintiffs also allege the class was damaged by Defendant's conduct, which breached the fiduciary duties owed to Plaintiffs and violated ERISA.

### a. Grounds for Typicality

ADC contests Carnahan's typicality on a number of grounds. First, Defendant argues that throughout the class period, class members made individualized choices to invest in ADC stock. These varying choices are reflected in purchases of different amounts of stock at different times for different reasons. Consequently, according to Defendant, the question of whether an alleged breach of fiduciary duty caused any one class member a loss is an individualized question that can not be answered by analysis of Carnahan's claims alone. Defendant contends that because the cause of each class member's loss is unique, a class action is not appropriate in this case. Defendant further argues that Carnahan's prudence claim is not typical because he admitted in his deposition testimony that he is not making such a claim. Carnahan Dep. at 123-24, 143-44. Moreover, Defendant contends Carnahan cannot show he relied on the alleged misrepresentations of Defendant in purchasing ADC stock.

Carnahan's admissions during his deposition testimony, particularly regarding his prudence allegations and reliance on the alleged misrepresentations of Defendant, make him a dubious class representative.[2] During his testimony, Carnahan admitted he did not feel Plan participants should have had the choice to invest in ADC stock during the class period. Id. Additionally, Carnahan was unable to identify specific statements by ADC he believes were misrepresentations. Id. at 87, 120, 133-34, 146, 175, 184, Ex. 30. The argument that Carnahan may not be a qualified class representative is bolstered when the adequacy issue, discussed

---

[2] In regard to Carnahan's deposition testimony, Defendant has filed a Motion to Strike Plaintiffs' Evidence. In its Motion, Defendant objects to consideration of declarations filed by Carnahan and Anderson, as well as the deposition correction sheet of Carnahan. The finding of this Order, however, that neither Carnahan or Anderson are adequate class representatives, resolves these issues. As a result, the Motion is denied.

below, is factored into the equation.  Because issues exist as to whether Carnahan's prudence claims and alleged reliance on Defendant's misrepresentations are typical of the class, the Court deems Carnahan unqualified to serve as a class representative.

Despite the shortcomings Carnahan has as a class representative, the claims he raises are appropriate for disposition in a class action.  See, e.g., In re Syncor ERISA Litig., 227 F.R.D. 338 (C.D. Cal. 2005); In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457 (E.D. Pa. 2000).  Although Defendant argues against class certification based on the claim that each individual class member purchased different amounts of stock at different times for different reasons, this same argument could be made for virtually every class action involving securities.  Taken to its logical conclusion, no class action would ever be certified if the exactness demanded by Defendant was enforced.  The fact that the class members did not buy the same amounts of stock at the same time does not doom Plaintiffs' case.  In fact, Plaintiffs have properly limited the class period to the dates in which the alleged misrepresentations and fiduciary breaches took place.  This is sufficient to ensure that the claims of the class members are typical.

      **b.**    **Release Issues**

Defendant also asserts Carnahan is an atypical class member because, when he was released from employment by ADC, he did not sign a release and covenant not to sue Defendant.  Defendant claims that 4,700 putative class members signed agreements releasing ADC from all claims by Plaintiffs.  As a result, Defendant contends that neither Carnahan, nor anyone who has failed to sign such a release, can serve as a class representative.  As Plaintiffs point out, however, this leads to the result that no class could ever be certified, because Defendant also argues that anyone who did sign a release is barred from bringing suit against Defendant.

The effect the release has on Plaintiffs' ERISA claims is not without complication. Although the release, on its face, appears to include virtually any claim Plaintiffs might have against Defendant, Plaintiffs cite case law in which otherwise global releases have failed to protect Defendant from ERISA § 502 claims brought on behalf of a benefit plan.  See, e.g., Bowles v. Reade, 198 F.3d 752, 759-60 (9th Cir. 1999); In re Elec. Data Sys. Corp. Energy "ERISA" Litig., 224 F.R.D. 613, 623-24 (E.D. Tex. 2004).  At first blush, the releases appear to be global in nature, potentially signaling problems for class members who have signed such releases.  At this time, however, the Court does not have sufficient information before it to determine whether the releases bar the claims in this litigation.

Because the effect of the releases will be an issue if certification of a class which includes members who have signed such releases is considered, this Order will approve only a class of members who have not signed releases.  Should it be determined after discovery that the releases do not, in fact, forestall the claims at bar, Plaintiffs may later move to certify a subclass consisting of members who have signed releases, or expand the current class to include putative class members that have signed releases.

**2.      Adequacy**

In analyzing Rule 23(a)(4), courts should consider both "whether the class representatives have common interests with the class members," and whether the named plaintiffs "will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63.  Because the representatives in a class action must "possess the same interest and suffer the same injury" as their fellow class members, it is axiomatic that they must be members of the class they seek to represent.  Roby v. St. Louis Southwestern Ry Co.,

7

775 F.2d 959, 961 (8th Cir. 1985) (citations omitted).

Defendant asserts that Plaintiff Carnahan poses issues of forthrightness and credibility not shared by members of the proposed class. Shortly before his termination from ADC, Carnahan posted on the internet an internal ADC memorandum. The memorandum detailed future company actions, commented on the effect of reduced spending in the telecommunications industry, and predicted cost reductions. Carnahan admitted his actions violated ADC company policy. Carnahan Dep. at 32, 43-49, Ex. 8. Following his actions, ADC terminated Carnahan from employment. Carnahan investigated and consulted counsel about filing a wrongful termination suit against ADC, but ultimately did not sue on the claim.

Carnahan's actions raise serious concerns about his ability to serve as a class representative. Specifically, there is a concern that Carnahan's past actions could subject him to a vigorous cross-examination which would be disadvantageous to other class members. Accordingly, Carnahan will not be certified as the class representative. In all other respects, however, this action is appropriate for disposition as a class action. Therefore, the Court will allow Plaintiffs 30 days to propose an alternative class representative. Shankroff v. Advest, Inc., 112 F.R.D. 190, 194 (S.D.N.Y. 1986).

### 3. Fed. R. Civ. P. 23(b)

In addition to the four factors listed above, a class action must fall under one of the three categories set forth in Federal Rule of Civil Procedure 23(b). This class action most appropriately falls under Rule 23(b)(1). The focus of ERISA breach of fiduciary duty litigation is generally on the actions of the defendant, even when misrepresentations are alleged, individual inquiry into each of the plaintiffs is unnecessary. In re CMS Energy ERISA Litig., 225 F.R.D.

539, 544 (E.D. Mich. 2004).  Rule 23(b) states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

In short, Rule 23(b) provides protection against prejudice to both plaintiffs and defendants. Ikon, 191 F.R.D. at 466.  Defendant argues that individual issues of causation make this case inappropriate for certification under Rule 23(b)(1).  However, it is alleged in this action that Defendant treated Plaintiffs similarly – that is, the alleged fiduciary breaches and misrepresentations of Defendant were disseminated to all Plaintiffs.  Moreover, ERISA § 502 only allows relief to the Plan as a whole, not to individual Plaintiffs.  As a result, similar actions have been certified under Rule 23(b)(1) in a number of analogous situations.  Gruby v. Brady, 838 F. Supp. 820, 828 (S.D.N.Y. 1993); CMS Energy, 225 F.R.D. at 544-46; Rankin v. Rots, 220 F.R.D. 511, 519 (E.D. Mich. 2004).

Although Defendant insists that Plaintiffs are seeking individual relief via this action, the law under which Plaintiffs bring their suit does not allow for individual recovery.  ERISA §§ 409, 502.  The Court, without evidence to the contrary, will assume that Plaintiffs' intentions are indeed to recover for the Plan.  Defendant further claims the class is not sufficiently broad to recover solely for the Plan, because those members who have signed releases are not eligible for membership in the class.  Whether certain individuals can or cannot join the class, however, has

9

no bearing on the ability of the Plan to recover damages incurred. An individual may bring a suit under ERISA to recover against fiduciaries "in a representative capacity on behalf of the plan as a whole." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n. 9 (1985). The proposed class, therefore, can sufficiently recover for the Plan.

**B.      Motion to Appoint an Additional Class Representative**

In addition to moving for class certification, Plaintiffs have moved to appoint Michael Anderson as an additional class representative. Alternatively, Plaintiffs move for leave to amend the Complaint to add a class representative. Given the disposition of the Motion to Certify Class, however, these Motions are denied. Plaintiffs have been given 30 days to propose a new class representative. Because the class is limited to those Plan participants who have not signed release forms, Michael Anderson may not be an eligible class member. The parties dispute whether Anderson signed one of the release forms at issue. If, in fact, he did sign a release form, Anderson can not qualify as a class member or a class representative. If it can be shown that Anderson did not sign a release, the possibility remains that he could serve as a class representative. However, with that question unresolved and still in discovery, Plaintiffs' Motion to appoint Anderson as a class representative must be denied.

**C.      Appeal of Magistrate Judge Noel's Order**

Plaintiffs also have appealed Magistrate Judge Noel's Order dated June 13, 2005. In reviewing an order on a nondispositive motion, the district court "shall consider such objections and shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." D. Minn. LR 72.2. The portions of Judge Noel's Order that Plaintiffs object to relate to the narrowing or denial of numerous discovery requests propounded

by Plaintiffs.  Plaintiffs divide the requests at issue into three broad groups: (1) the "level" dispute, wherein Plaintiffs appeal the portion of the Order limiting production concerning the suitability of Plan investments to the top tiers of an organizational chart; (2) the "undue burden" dispute, in which Plaintiffs object to the Order's findings that certain requests for documents would cause undue burden to Defendant; and (3) the "participant communications" dispute, in which Plaintiffs appeal the Order to the extent that it limits discovery of communications to Plan participants regarding Plan investments.

Federal Rule of Civil Procedure 26(b)(1) states: "Parties may obtain discovery . . . that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  While broad in nature, Rule 26 is not without its limits.  Plaintiffs contend Rule 26 is constructed to allow for "maximum discoverability;" however, this phrase overstates the scope of discovery.  It is not disputed that Rule 26 does not allow for unlimited discovery.

In reviewing Judge Noel's Order, the Court finds that the Order is not clearly erroneous or contrary to law.  Rather, the Order reasonably balances the twin goals of facilitating discovery without turning discovery into a burdensome fishing expedition.  As to the "level" dispute, Defendant has produced documents from the files of each named Defendant; the files of each of the heads of the three business groups in place during the time period relevant to this litigation, along with the files of the controllers and human resource directors of those business groups; and the files maintained by the corporate retirement benefits department.  These files should provide a sufficient factual basis for Plaintiffs to proceed.  There is no indication that limiting discovery to this level of management is clearly erroneous or contrary to law.

Similarly, the portion of the Order dealing with unduly burdensome requests is well grounded in law. Plaintiffs' requests are broadly written to cover the production of documents relating to ADC's business, forecasts, and performance. Given their broadest reading, these requests might indeed encompass nearly every document ADC has ever produced. At some point in every discovery effort, a reasonable line must be drawn. A review of the Order reveals that the lines drawn by Judge Noel are reasonable, and are not clearly erroneous or contrary to law.

Finally, Plaintiffs appeal the ruling narrowing the scope of its document request seeking communications between the company and Plaintiffs regarding the business or financial performance of ADC. This request has been properly narrowed by Judge Noel to communications relating to ADC stock, as well as general information regarding the Plan. Again, nothing suggests this reasonable tailoring of Plaintiffs' request is clearly erroneous or contrary to law.

To bolster their argument, Plaintiffs rely on various cases that discuss the generally broad nature of discovery. None of these cases, however, call for unlimited discovery, and none suggest that the boundaries set by Judge Noel are contrary to law. Consequently, with no factual or legal basis to support the contention that Judge Noel's Order is clearly erroneous, it will be adopted in its entirety.

**D.     Defendant's Motion for Sanctions**

Finally, Defendant has moved for sanctions against Plaintiffs for allegedly failing to comply with the May 26, 2005 Order of this Court compelling responses to two interrogatories propounded by Defendant. Although Plaintiffs did respond to the interrogatories, Defendant

claims the responses supplied by Plaintiffs are deficient. Specifically, the two "contention interrogatories" requested the factual basis for various allegations asserted in the Complaint. An inspection of Plaintiffs' answers to these interrogatories reveals that they are not completely devoid of factual detail, although certain areas do contain vague allegations that are insufficiently fleshed out, such as the contentions that ADC artificially inflated its stock price via inaccurate and misleading information. Plaintiff promises in these interrogatories to add detail after further discovery. The Court is satisfied that the answers provided by Plaintiffs are sufficiently detailed given this stage of discovery; however, as discovery comes to a close, Plaintiffs will need to supplement their interrogatory answers as required by the Federal Rules of Civil Procedure to further clarify the vague allegations. Should Plaintiffs fail to do so, the sanctions suggested by Defendant may well be appropriate.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Certify Class [Docket No. 110] is **GRANTED** in part and **DENIED** in part such that Plaintiffs have thirty days to propose a new, adequate class representative;

2. Plaintiffs' Motion to Appoint an Additional Class Representative [Docket No. 105] is **DENIED**;

3. Defendant's Motion to Strike Plaintiffs' Evidence [Docket No. 158] is **DENIED**;

4. Defendant's Appeal of Magistrate Judge Decision [Docket No. 142] is **DENIED**;

5. Magistrate Judge Noel's Order of June 13, 2005 [Docket No. 139] is **AFFIRMED**; and

6. Defendant's Motion for Sanctions [Docket No. 166] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 15, 2005.