# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

IN RE ADC TELECOMMUNICATIONS,　　　　　)
INC. ERISA LITIGATION　　　　　　　　　)　　　MASTER FILE: 03-CV-2989

_____　)

　　　　　　　　　　　　　　　　　　　　)　　　ADM/FLN

　　　　　　　　　　　　　　　　　　　　)

THIS DOCUMENT RELATES TO:　　　　　　　)

　　　　　　　　　　　　　　　　　　　　)

ALL ACTIONS　　　　　　　　　　　　　　)

_____　)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF NOTICE PLAN,
<u>AND SETTING OF FINAL FAIRNESS HEARING</u>**

## INTRODUCTION

Plaintiff James Carnahan ("Plaintiff") respectfully submits this Memorandum of Law in Support of his motion for preliminary approval of the proposed settlement[1] with Defendants[2] and for conditional certification of a settlement class pursuant to FED. R. CIV. P. 23.  Specifically, the motion seeks (1) the Court's preliminary approval of the settlement, (2) conditional certification of the Class, (3) Court approval of the parties' Notice plan, and (4) the setting of a Final Fairness Hearing.[3]

The Settlement includes two parts: (1) a cash component of $3,250,000 and (2) the implementation of significant and important structural changes to the ADC

---

[1]  The Settlement Agreement and Release ("Settlement Agreement" or "Settlement"), attached as Exhibit A to the Affidavit of Joseph H. Meltzer ("Meltzer Affidavit") filed with the accompanying Motion for the Preliminary Approval of Settlement, itself has several exhibits, including the proposed form of Notice and proposed forms of Preliminary and Final Approval Orders.  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Additionally, as of the date of this filing, the Settlement Agreement has been executed by the vast majority of the parties to this litigation.  The fully executed Settlement Agreement will be provided in short order.

[2]  Defendants include ADC Telecommunications, Inc. ("ADC" or the "Company"), ADC Retirement Committee, Robert Annunziata, John A. Blanchard, III, John J. Boyle, III, William Cadogan, Dr. James C. Castle, Patricia S. Gilroy, Gokul V. Hemmady, B. Kristine Johnson, Laura Owen, Jeffrey D. Pflaum, Debra L. Raths, Charles Roehrick, Richard R. Roscitt, Jean-Pierre Rosso, Robert E. Switz, Larry Wangberg, John D. Wunsch and Charles D. Yost.

[3]  The Plaintiffs have set forth in this Memorandum various factors (factual, legal, and financial) that they believe support the conclusion that the settlement is fair, reasonable, and adequate.  Plaintiffs are not, by entering into the Settlement, admitting to the ultimate truth or falsity of any of the factual, legal or financial factors or conclusions discussed in this motion that favor Defendants; rather, Plaintiffs are merely acknowledging, for settlement purposes only, that the Court could find such factors exist and provide a sound basis for preliminarily approving  the Settlement.

Telecommunications, Inc. Retirement Savings Plan (the "Plan"). The proposed settlement is fair, reasonable and adequate. Upon preliminary approval of the Settlement, pursuant to FED. R. CIV. P. 23(e)(1)(B), Class members will receive notice advising them of the terms of the Settlement, how to object to the Settlement, and the date of the Final Fairness Hearing. The notice will also explain who is a member of the settlement class. As an integral part of the Settlement, the parties seek certification of a class of all persons who were participants or beneficiaries in the Plan at any time between February 24, 2000 and October 26, 2005 (the "Class Period" or "Settlement Class Period"), and whose accounts included investments in ADC stock or the ADC Stock Fund (excluding Defendants).

In addition to the cash component, the Settlement provides substantial benefits to members of the Settlement Class, including the agreement by (1) ADC retaining an Independent Advisor to advise the Plan's ADC Retirement Committee regarding the ADC Stock Fund or (2) ADC or the ADC Retirement Committee retaining an independent (third party) fiduciary, in lieu of an independent advisor, with respect to the ADC Stock Fund for three years. ADC also has agreed, at its own expense, to provide fiduciary training for the Plan administrator, the ADC Retirement Committee (the "Committee"), on an annual basis for three years. As explained herein, the proposed

relief provides a substantial benefit to the Class and strongly diminishes the likelihood that analogous litigation will be brought forward on behalf of the Plan in the future.[4]

Plaintiff submits that the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in this Circuit, especially one involving claims implicating alleged breaches of fiduciary duty regarding pension plan investment in employer securities, a rapidly developing area of the law. Further, Plaintiff firmly believes that certification of a non-opt-out settlement class is clearly appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure and the proposed notice plan more than meets the requirements of due process.

Settlement was not reached until after Defendants' Motion to Dismiss was fully briefed, argued and denied, full fact discovery had taken place, experts had been retained and utilized, a class certification motion had been filed, briefed, argued and decided and numerous discovery-related motions and appeals had been filed and briefed. Each term and detail of the Settlement was the product of spirited and extensive arms-length negotiations. The Settlement is in the process of being thoroughly vetted by an Independent Fiduciary, U.S. Trust. Moreover, the proposed class notice process undoubtedly satisfies the requirements of due process -- the individual and web based forms of notice used are consistent with the forms of notice utilized in analogous actions.

As set forth below, all prerequisites for preliminary approval of the settlement, approval of the notice plan, and certification of the Settlement Class have been met. In

---

[4] The Settlement therefore adequately addresses some of "the problems that necessitated the filing of this lawsuit originally" and should be approved on that basis. *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005).

short, the proposed Settlement should be preliminarily approved at this juncture and the Court should authorize providing notice to the Class.[5]

## PROCEDURAL HISTORY

On April 30, 2003, Lorraine L. Osborne filed a complaint against ADC Telecommunications, Inc., William Cadogan, Robert E. Switz, B. Christine Johnson, John A. Blanchard, III, Jean-Pierre Russo, John D. Wunsch and American Express Trust Company. Marjorie Malinski filed a similar complaint on May 21, 2003 against many of the same defendants and including Richard R. Roscitt, Charles T. Roehrick, John J. Boyle, III and Charles D. Yost as additional Defendants. On June 26, 2003, Plaintiff James A. Carnahan filed a similar complaint against the same Defendants. By order of the Court entered October 2, 2003, the cases were consolidated and Plaintiffs filed their Consolidated Complaint of ERISA Plaintiffs Lorraine L. Osborne, Marjorie Malinski and James A. Carnahan for Plan-Wide Relief Under the Plan (the "Complaint") on November 26, 2003. On May 4, 2005, Plaintiff Carnahan moved this Court for an Order appointing Michael Anderson as an additional class representative.

The Complaint alleges that Defendants breached their respective fiduciary duties pursuant to the Employee Retirement Income Security Act ("ERISA") by allowing the Plan to purchase and hold ADC common stock, at a time when, according to the Plaintiff, ADC common stock was an imprudent investment for the Plan. Plaintiff also alleges that Defendants violated ERISA by (1) providing misleading, incomplete, and inaccurate

---

[5] The Preliminary Order of Approval proposed by all parties to the Settlement Agreement is appended to the Settlement Agreement as Exhibit B.

statements to the Plan's participants regarding the Company's operational and financial results, (2) failing to properly monitor and provide material information to the Committee members, (3) allowing or abetting fiduciary breaches of their co-fiduciaries, and (4) failing to avoid or remedy inherent conflicts of interests between their corporate interests and fiduciary responsibilities to the Plan and its participants.

In particular, Plaintiff alleged that, throughout the Class Period, the Plan was allowed to accumulate and maintain, through Company-encouraged participant investments, a significantly large position in ADC common stock. Such a heavy single-equity investment, in addition to being inherently risky, was allegedly particularly imprudent given that ADC allegedly disseminated optimistic and unrealistic predictions that concealed the their true financial health and prospects despite (1) alleged corporate misconduct and accounting/inventory irregularities and (2) the general downturn in the telecommunications industry, including the Company's business. Specifically, Plaintiffs alleged that Defendants imprudently permitted the Plan to invest in Company stock while ignoring ADC's (i) own internally generated negative forecasts; (ii) improper shifting of revenues from future quarters into current quarters in order to meet earnings forecasts; and (iii) drastically rising inventory levels.

Through his counsel's investigation as well as through extensive direct and third party written and deposition discovery, Plaintiff obtained extensive documentation regarding the Plan and its performance, as well as non-public data regarding the Plan's investment in ADC Stock and ADC's business health, prospects, reporting and management during the relevant time period. Plaintiff's Counsel has conducted a

thorough investigation into plaintiff's claims, the underlying events, facts, actions, and legal/factual allegations presented in the Complaint, and the operations and administration of the Plan. This investigation included, *inter alia*, conducting individual interviews with Plan participants and employees, collecting, reviewing and analyzing hundreds of thousands of Plan and Company-related administrative, fiduciary review and asset management, business, inventory and other documents/communications, and analyzing potential damages. Plaintiff's Counsel has also retained experts to review the financial and legal principles applicable to Plaintiff's claims and their factual predicates.

The litigation of this matter was complex and hotly contested by Defendants from the outset. The Defendants filed a motion to dismiss on February 2, 2004, triggering intensive briefing of complicated and novel issues on both sides. Plaintiff filed a Response to Defendants' Motion to Dismiss on March 18, 2004, which was followed by Defendants' Reply on April 19, 2004. This Court entertained oral argument regarding Defendants' Motion to Dismiss on May 28, 2004. The Court issued an Order denying the motion on July 26, 2004.

As this Court is well aware, the discovery process in this matter was extensive and hard fought by all parties involved. Plaintiff served four sets of document requests on Defendants, seeking multiple categories of information. Defendants vigorously resisted document production requiring letters of inquiry and several lengthy and extensive conference calls attempting to resolve disputed issues. Simply put, the parties had strong positions regarding the proper scope of paper/deposition discovery – as the Court was made aware through numerous discovery motions/appeals of orders. Plaintiff served four

sets of *subpoenae* on third party witnesses, including American Express Trust Company, Watson Wyatt, Ernst & Young, LLP and Mercer Investment Consulting, Inc.  In total, Plaintiff obtained, reviewed and analyzed hundreds of thousands of pages of documents/communications/electronic discovery related to the allegations in the Complaint.   Plaintiff served requests for admissions and two sets of interrogatories posing numerous, directed and discrete questions related to this litigation.  Ultimately, Plaintiff was required to file a Motion to Compel regarding certain requests involved with the above referenced propounded discovery – and respond to/argue against numerous discovery motions by Defendants from early on in the fact discovery process.

Specifically to the last point, Plaintiff provided responses to three sets of Interrogatories, two sets of requests for production and a set of requests for admission from Defendants, including multiple contention interrogatories.  Plaintiff prepared for, led, attended and/or summarized the depositions of numerous fact witnesses and certain depositions pursuant to Rule 30(b)(6) of the Company and third party witnesses.

As noted above, Plaintiff filed a Motion to Certify the Class on May 4, 2005 which was briefed extensively by all parties.  Oral argument was conducted on July 12, 2005.  On September 15, 2005, Plaintiff's Motion was granted in part and denied in part.

Despite their strongly held differences in opinion regarding the merits of this case, the parties worked together in a genuine effort to reach a mutually satisfactory settlement of Plaintiffs' claims, as is generally preferred in federal litigation.  *See* section IA, *supra*. Fortunately, the parties were able to come to an agreement that both addresses certain of Plaintiffs' ongoing concerns and is acceptable to Defendants.

8

### THE PROPOSED SETTLEMENT

The proposed Settlement provides for the payment by Defendants in the amount of three million two hundred fifty thousand dollars ($3,250,000.00) to a Settlement Fund. Further, the Settlement Agreement contemplates significant and highly valuable structural changes to the administration of the Plan and its investments. The Settlement Fund includes any award of Plaintiff's attorney's fees and costs, payment to the Settlement Class members according to a plan of allocation to be approved by the Court, fees of an independent settlement fiduciary, and all costs of settlement administration (as set forth in the Settlement).

Further, ADC, at its own expense and without reimbursement from the Settlement Fund, will hire an independent advisor to advise the ADC Retirement Committee regarding the ADC Stock Fund, and to retain such an advisor for three years. In lieu of retaining an independent advisor, ADC or the ADC Retirement Committee may choose to retain a third-party fiduciary with respect to the ADC Stock Fund. Additionally, ADC, at its own expense and without reimbursement from the Settlement Fund, will provide fiduciary training for ADC Retirement Committee members on an annual basis for a three year period, unless ADC has retained a third-party fiduciary for the ADC Stock Fund or does not offer the ADC Stock Fund as a Plan investment alternative.

Notice of the settlement, in the form attached to the Settlement Agreement as Exhibit D, will be sent by first-class mail to the current or last known addresses of all class members. Further, the Notice will be timely published by counsel for the Settlement class by creating a Settlement website (http://www.ADCerisasettlement.com)

, separate from Settlement Class counsel's firm websites.  The website will allow Plan

participants to view a summary description of the Settlement, read a description of the

status of  the case, access the Settlement Agreement and related Settlement documents,

review "frequently asked questions" regarding the litigation and Settlement, send e-mail

requests (or dial a toll-free number) for further information or additional questions.

As a result of the Settlement, the Complaint will be dismissed with prejudice and

the Class' (and the Plan's as brought by Plaintiff) claims will be released, as described in

the Settlement Agreement.  Additionally, as described in detail in the Settlement

Agreement, certain claims that have or could have been asserted by Defendants against

Michael Anderson, James Carnahan, Robert Crew, Marjorie Malinski and Lorraine

Osborne Devlin have been fully released.

### PROPOSED TIMETABLE

The proposed Preliminary Approval Order ("Order") includes a blank space for

the Court to provide a date of the final approval "fairness" hearing that must be held in

order to properly effectuate the Settlement.  In this regard, Plaintiff proposes the

following schedule of events if the Court preliminarily approves the Settlement

Agreement (Plaintiff is in discussion with Defendants regarding certain of the dates

below – but the parties have agreed on the proposed Final Fairness Hearing date):

| Event | Time for Compliance |
|---|---|
| Deadline for Delivering Notice to members of the Settlement Class *via* first-class mail and establishment of a separate Settlement website | **August 3, 2006** (60 days prior to the Proposed Fairness Hearing) |
| Deadline for Class Members to comment upon or object to the proposed Settlement | **September 12, 2006** (20 days prior to the proposed Fairness |

| | Hearing) |
|---|---|
| Deadline for Plaintiff to file motion for final approval of the proposed settlement, motion for approval of attorney's fees and expenses, and motion for approval of a case contribution award to named plaintiffs. Responses to class members' objections due. | **September 22, 2006** (10 days prior to the proposed Fairness Hearing) |
| Proposed Fairness Hearing | **October 2, 2006** |

Further, at least ten (10) days prior to the Fairness Hearing, Plaintiff will file with the Court a declaration certifying that they have distributed the Notice in full compliance with the Order. As presented, the events set forth above are tied to the Fairness Hearing Date, which the parties respectfully request be scheduled for October 2, 2006.

ARGUMENT

## I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Law Favors and Encourages Settlements

Plaintiff presents this Settlement to the Court for its review under Fed. R. Civ. P. 23, which provides in pertinent part:

> (e)     Settlement, Voluntary Dismissal, or Compromise.
>
> (1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
>
> (B)     The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
>
> (C)     The court may approve a settlement, voluntary dismissal, or compromise that would bind class

> members only after a hearing and on finding that the
> settlement, voluntary dismissal, or compromise is fair,
> reasonable, and adequate.

Federal courts strongly favor the voluntary resolution of complex class actions. *White v. NFL*, 836 F. Supp. 1458, 1476, (D. Minn. August 19, 1993), *citing Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, * 24 (S.D.N.Y. Oct. 18, 2004);  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718* F. Supp. 1099, 1103 (S.D.N.Y. 1989) (compromise is particularly appropriate in complex class actions); Newberg & Conte, Newberg on Class Actions §11.41 (3d ed. 1992).  In class actions in particular, "there is an overriding public interest in favor of settlement."  *In re Charter Communications Inc. Securities Litigation,*, 2005 U.S. Dist. LEXIS 14772, * 15 (E.D. Mo. June 30, 2005) *citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Little Rock Sch. Dist. V. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1391 (8th Cir. 1990) (holding that the policy favoring settlement is so strong that such settlement agreements are "presumptively valid").  Furthermore, "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Communications Inc. Securities Litigation,*, 2005 U.S. Dist. LEXIS 14772, * 19 (E.D. Mo. June 30, 2005) *citing Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).   The district court has discretion in evaluating a class action settlement, and its decision will not be overturned unless an abuse of discretion is shown.   *White v. NFL*, at 1476-77, *citing Weiner v. Roth*, 791 F.2d 661, 662 (8th Cir. 1986) (*per curiam*).

The Court has wide discretion in determining whether to approve a class action settlement, however the Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981), *See also*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). *Accord In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 509. Because the object of the settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1987) ("the court need not undertake the type of detailed investigation that trying the case would involve."). Instead, the Court's inquiry should be limited to the consideration of whether the proposed settlement is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)(citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). Rather, when experienced counsel have negotiated and presented a settlement that has been negotiated at arm's-length in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *Minolta Camera Prods. Antitrust Litigation*, 668 F. Supp 456, 460 (D.Md 1987); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

This initial presumption of fairness and adequacy applies with special force here because the Settlement was reached by experienced, fully-informed counsel after protracted and intense arm's-length negotiations.  "So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).  *See also* Manual for Complex Litigation § 30.43 at 289 (3d ed. 2002); Newberg & Conte, Newberg on Class Actions § 11.42 (3d ed. 1992); 3B Moore's Federal Practice ¶ 23.1.24[2] (2d ed. 1992).  In addition, no question exists that Plaintiff's Counsel was fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.  Thus, little doubt exists that this Settlement is entitled to the initial presumption of fairness.

Preliminary approval of a class action settlement should be granted if the court's initial evaluation of the proposal discloses neither grounds to doubt its fairness nor obviously fatal deficiencies (such as unduly preferential treatment of segments of the class), and appears to fall within the range of possible approval.  *See In re Vitamins Antitrust Litig.*, 1999-2 Trade Cas. (CCH) ¶ 72,726 at 86,356 (D.D.C. 1999) ("*Vitamins Antitrust Litig.*"), *citing* MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.41 (West 1999), and *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).

A hearing on a motion for preliminary approval is not a fairness hearing.  Rather, its purpose is to determine whether to notify class members of the proposed settlement and proceed with a fairness hearing.  *See In re Traffic Executive Assoc. – Eastern Railroads*, 627 F.2d 631, 633 (2d  Cir. 1980) (grant of preliminary approval is not

14

"tantamount to a finding that the settlement is fair and reasonable.  It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"); *Armstrong v. Board of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980).

Plaintiffs submit that there are no grounds to doubt the fairness of this Settlement, and that it contains no obvious deficiencies.  As set forth below, application of each of the relevant evaluative factors to the terms of the Settlement Agreement demonstrates that the proposed settlement is fair, reasonable and adequate, and is well within the range of "possible approval."  Moreover, the Court should bear in mind that, although Plaintiffs address herein the factors for final settlement approval following class notice, they are requesting only preliminary approval at this time.

In sum, preliminary approval requires only that the settlement be within the range of reasonableness, with no obviously fatal deficiencies, so that the settlement might be approved following class notice.  As discussed below, the proposed Settlement Agreement easily meets this standard.

### B.     The Eighth Circuit's Standards Governing Class Action Settlements

"In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'"  *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).  In evaluating a proposed settlement, however, courts must "not decide the merits of the case or resolve unsettled legal questions."  *In re Charter Communications Inc. Securities Litigation,*, 2005 U.S. Dist. LEXIS 14772, * 17 (E.D. Mo. June 30, 2005) *citing Carson*

*v. American Brands, Inc.* 450 U.S. 78, 88 n.14, (1981).  In the Eighth Circuit, the courts focus on several factors when determining whether a settlement is fair, reasonable and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.[6]  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 125 (8th Cir. 1975) (citations omitted).

When analyzed under the facts of this case, all of these factors militate in favor of approving this Settlement.  Plaintiff addresses these factors in turn.  Indeed, in the experienced judgment of Plaintiff's Counsel, there is serious doubt that a more favorable result could be obtained if this case were litigated against Defendants through trial and the inevitable post-trial motions and appeals.  As such, the Settlement clearly satisfies the relevant factors, set forth above, thereby warranting this Court's preliminary approval.

      **1.**    **The Merits of Plaintiff's Case When Weighed Against the Settlement Terms Favor Approval of the Proposed Settlement Agreement.**

      **a.**    **The merits of Plaintiff's case**

Despite the strengths of Plaintiff's case, Plaintiff faces numerous hurdles to establish Defendants' liability and prove existence and extent of any damages to the Plan and class.  To prevail on their ERISA claims, the Class must show that each Defendant failed to comply with his, her or its duties under ERISA, a daunting undertaking

---

[6] At this juncture, plaintiffs seek preliminary approval of the settlement, including approval of the proposed class notice.  Plaintiffs respectfully submit, therefore, that this factor (level/content of objections, if any) is not critical at this preliminary stage, but will be upon their request for final settlement approval.

considering the uncertainty in this evolving area of the law.  Defendants did and would likely continue to present a number of defenses that have been upheld by some courts as preventing ERISA recovery on behalf of a plan's participants.  These include: 1) that, as a matter of law, ADC stock was not an "imprudent" plan investment; 2) that Defendants did not function as ERISA fiduciaries with regard to Plan investments in ADC stock; 3) that Plaintiff failed to plead or prove that ADC and the Individual Defendants breached their fiduciary duty to monitor their alleged appointees, that Defendants breached their fiduciary duty to disclose complete and accurate information to Plan participants (to the extent that such a duty exists), or properly state a claim for co-fiduciary liability.

Further militating in favor of settlement, other district courts have held that under certain circumstances (such as when there are serious issues with plaintiff's ability to prove/present a fiduciary's non-action in the face of *material* non-public information/corporate malfeasance) there is no liability when fiduciaries invest in employer securities, including several Circuit courts.  *See, e.g., Summers v. State St. Bank & Trust Co.*, --- F.3d ----, 2006 WL 1751888 (7th Cir. June 28, 2006); *Wright v. Or. Metallurgical Corp.*, 222 F. Supp 2d 1224 (D. Or. 2002), *aff'd*, 360 F.3d 1090 (9th Cir. 2004); *In re Syncor ERISA Litig.*, No. 03-CV-2446, 2006 U.S. Dist. LEXIS 976 (C.D. Cal. Jan. 10, 2006);  *Smith v. Delta Air Lines, Inc.*, 422 F.Supp.2d 1310 (N.D. Ga. March 31, 2006); *Crowley v. Corning, Inc.*, 234 F. Supp 2d 222 (W.D.N.Y. 2002); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003); *In Re McKesson HBOC ERISA Litigation*, No. 00-CV-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002); *Hull v. Policy Management Systems Corporation*, No. 00-CV-778-17, 2001 WL 1836286

(D.S.C. Feb. 9, 2001).  Many of the dismissals were premised on the fact that the

company was not facing impending collapse or sufficiently dire financial circumstances.

Here, ADC (arguably at least) never threatened with imminent and certain bankruptcy (as

was the case in the much-publicized corporate collapses in Enron and WorldCom), even

though its stock declined significantly during much of the Class Period.  If the Court

adopted the "impending collapse" standard of review regarding the Defendant-

fiduciaries' conduct (despite Plaintiff's protestations) in ruling on soon-to-be-filed

motions for summary judgment, the Settlement Class would have recovered nothing.

(This is especially true here as Plaintiffs and Defendants were involved in a number of

running discovery disputes involving production of documents and requested alteration of

the discovery/expert report schedule.  If Plaintiffs did not prevail in convincing the Court

to overturn certain decisions of Magistrate Judge Franklin L. Noel ((an appeal was

pending before the Court as the parties' culminated their settlement efforts)), they likely

would have been precluded from fully utilizing – in their view – their fiduciary and

ERISA damages experts, increasing the likelihood that Defendants' would prevail on a

dispositive motion or at trial.)

        Thus, this action (1) involves claims for relief under theories of liability and

recovery that are still in the process of development and (2) may have gone to trial with

Plaintiff – in their view which Defendants' vigorously and effectively contested – not

having an opportunity to present a full array of expert testimony.  While Plaintiff's

Counsel remains confident in their ultimate ability to prove the claims asserted, and were

prepared to follow through with the litigation through trial and/or appeals, the risks of the

case being dismissed at the summary judgment stage, or of losing at trial, when weighed against the immediate benefits of settlement, indicate that the Settlement is in the best interest of the Class.

In addition to establishing Defendants' liability, Plaintiff also faces substantial risk in proving damages.  Establishing ERISA damages involving the imprudent investment of ERISA pension plan assets was first set out in *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).  ERISA requires the breaching fiduciaries to make good to the plan the difference between the most profitable plan alternative and the challenged imprudent investment.  *Donovan*, 754 F.2d at 1056 ("[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these.").

In general, the calculation of "ERISA" damages would be "complex, time-consuming and expensive," *See, e.g., In re Global Crossing Securities & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D. N.Y. 2004) ("*Global Crossing*").  Plaintiff retained experts to perform damage calculations in advance of the mediation conducted in this matter.  However, preparations for trial would entail a great amount of time, effort and expense.  Calculation of damages would have to be brought through full discovery process and adjudication where the judge, as trier of fact, can set the relevant time period when the relevant investment was to be considered "imprudent" for the plan at issue (a factually intensive question in and of itself).  See *Donovan*, 754 F.2d at 1057.  Damages calculations in ERISA cases like this are, in practice, computer- and expert-intensive.  The proof invariably requires a sophisticated computer model of the plans involved,

usually tracking the assets held by the plan and its participants, purchases and sales of the

individual accounts of participants as well as any relevant assets held, purchased and/or

sold by the plan but not allocated to its participants.  These calculations must be

repeatedly performed to calculate damages suffered by each participant's account as well

as the plan as a whole.  An expert must create the model, test it, and effectively explain it.

This sort of complexity, or the possibilities of glitches in the model, can have unexpected

results.  This type of complexity favors early resolution.  *In re Warner Communications*

*Sec. Litigation*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *Milken & Assoc. Sec. Lit.*, 150

F.R.D. at 54 (approving settlement and noting that damage calculations is often a "battle

of the expert, with no guarantee of the outcome")[7]; *Bonime v. Doyle*, 416 F. Supp. 1372

(S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages a

factor supporting settlement).

    As indicated above, the determination of ERISA damages would invariably

require the presentation of expert testimony.  While Plaintiffs' Counsel believes that

reliable and convincing expert testimony will be provided on the damages question (with

the caveats regarding expert testimony described above), and that a judgment could

---

[7] *See, e.g., PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *Warner Communications*, 618 F. Supp. at 744-45 ("In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.").  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"); *United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) (jury under no obligation to accept as completely true testimony of any expert witness).

ultimately be obtained for the full amount of damages available to the Class under the law, meaningful legal (in addition to the expense/practical roadblocks) obstacles remain. First, the Court must determine that Plaintiff's damages model is admissible. The Class is by no means assured of a ruling in its favor. *See, e.g., Kaufman v. Motorola, Inc.*, No. 95-C-1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is possible that the finder of fact might disagree with the Class' expert, or merely find Defendants' expert more persuasive.

In a case such as this, where Defendants' potential damage models are arguably more superficially straight-forward than Plaintiffs' analyses, such a result is not inconceivable. As a result of the aforementioned considerations, the likelihood of proving damages even assuming the Class prevailed on the liability issue is unclear, both as to the extent and methodology. "In short, the legal and factual complexities and uncertainties of proving ERISA damages also militate in favor of settlement." *In re Global Crossing*, 225 F.R.D. at 460.

> **b.    The terms of the Settlement agreement favor approval**

As discussed above, the proposed settlement benefits the entire class. The proposed settlement has two components. First, it provides a payment by Defendants in the amount of ($3,250,000.00) to a Settlement Fund, which includes Plaintiff's attorney's fees and costs, payment to Settlement Class members, fees of an independent settlement fiduciary, and all costs of settlement administration. Second, it includes structural changes to the administration of the Plan and its investments that will benefit the

participants and adequately addresses the problems that necessitated the filing of this lawsuit originally.

To repeat, ADC, at its own expense and separate from the Settlement Fund, will hire an independent advisor to advise the ADC Retirement Committee regarding the ADC Stock Fund, and to retain such an advisor for three years.  In lieu of retaining an independent advisor, ADC or the ADC Retirement Committee may choose to retain a third-party fiduciary with respect to the ADC Stock Fund.  Additionally, ADC, at its own expense and without reimbursement from the Settlement Fund, has also agreed to provide fiduciary training for ADC Retirement Committee members on an annual basis for a three year period, unless ADC has retained a third-party fiduciary for the ADC Stock Fund or does not offer the ADC Stock Fund as a Plan investment alternative.

### 2.      Defendants' Financial condition

Plaintiffs do not contend that Defendants could not withstand a larger judgment, but this is no obstacle to approving the Settlement.  Countless settlements have been approved where a settling defendant has had the ability to pay greater amounts.  *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3rd Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Young Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 150-51 (D.N.J. 2004); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).  "This is especially true where, as here, the other [settlement evaluation]

factors weigh heavily in favor of settlement." *See, e.g., Global Crossing*, 225 F.R.D. at

462.

### 3. The complexity and further expense of continued litigation weighs in favor of the proposed settlement

"The possible length and complexity of further litigation is a relevant

consideration to the trial court in determining whether a class action settlement agreement

should be affirmed." *In re Wireless Telephone Cost Recovery Fees Litigation*, 2004 U.S.

Dist. LEXIS 23342, * 39 (W.D. Mo. April 20, 2004).  Here, the ERISA claims advanced

by the Plaintiffs involve numerous complex legal and factual issues, which will require

many additional depositions and expert discovery and testimony, exponentially adding to

the expense and duration of the litigation.  As noted above, Plaintiffs allege and therefore

would be required to prove at trial that Defendants breached their ERISA-mandated

duties by: (i) failing to prudently and loyally manage the Plan's assets; (ii) failing to

monitor the committee Defendants and provide them with accurate information; (iii)

failing to loyally serve the Plan and its participants due to unresolved conflicts of interest;

and (v) knowingly enabling their co-fiduciaries to commit breaches of their fiduciary

responsibilities.  Conducting the balance of fact (if Plaintiff were to prevail on certain

discovery motions/appeal(s)) and expert discovery/motion practice by itself, would be an

extremely complex and expensive endeavor.  It is not difficult to envision many months

of additional costly and hotly contested fact and expert discovery, as well as dispositive

motions and motions *in limine* and other pre-trial litigation. These factors, therefore,

weigh heavily in favor of settlement.  *See In Re Charter Communications, Inc. Securities*

*Litigation*, 2005 U.S. Dist. LEXIS 14772, at * 26-27 (E.D. Mo. June 30, 2005) (court approved settlement where further litigation would take years and cost millions of dollars, which in turn would deplete insurance policy proceeds funding the cash portion of the settlement).

The legal issues implicated by this Lawsuit are complex and will require extensive and expensive expert testimony as well as multiple dispositive motions and likely appeals. The Southern District of New York has recently described in a similar ERISA case the fact that there is a "general risk inherent in litigating complex claims such as these to their conclusion." *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, *25 (S.D.N.Y. Oct. 18, 2004) (approving settlement). Clearly, the complex nature of this type of case weighs in favor of settlement. In *In re Global Crossing Securities and ERISA Litig.*, the court noted:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved. These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense -- and thus militate in favor of settlement approval.

225 F.R.D. 436, 456 (S.D.N.Y. 2004). *See also DiFelice v. U.S. Airways, Inc.*, --- F.Supp.2d ----, 2006 WL 1793624 (E.D. Va. June 26, 2006) (holding, in an analogous action and after a bench trial which followed extensive discovery and dispositive and

24

class certification motion practice, that the defendant-fiduciaries' actions were prudent despite the long slide of U.S. Airways stock price).

There exists no doubt that because this case is settling before what would undoubtedly be: (1) lengthy, costly and intense discovery, including expert discovery, and (2) the filing of motions for summary judgment, final trial preparation, trial, and appeals, the litigants have been spared the majority of the delay and expense of continued litigation, and countless hours of the Court's time and resources have also been spared. Moreover, even if the Class could recover a judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce its value. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D. N.Y. 2003) ("even if a shareholder or class member is willing to assume all the risks of pursuing the actions through further litigation. . . the passage of time would introduce yet more risks . . . in light of the time value of money, make future recoveries less valuable than this current recovery); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D. N.Y. 1992) (holding that costs and uncertainty attendant with trial and possible appeal are factors that favor settlement).  Furthermore, a winning jury/bench verdict does not provide absolute assurance of recovery, where post-trial motions and appeals are likely to ensue. *See, e.g., Robbins v. Koger Props., Inc*., 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing case with prejudice in securities action).[8]

---

[8]  Even a trial verdict "is not a guarantee of ultimate success."  *Milken*, 150 F.R.D. at 53 (noting reversal of multimillion dollar judgment in *Berkey Photo, Inc. v. Eastman Kodak*

The Settlement, which consists of highly valuable structural relief to the Plan and the implementation of other safeguards to protect the Plan's participants and beneficiaries results in a substantial tangible recovery at this point, without the considerable risk, expense, and delay of trial.  This result weighs heavily in favor of the proposed Settlement.  *See Slomovics v. All for a Dollar, Inc*., 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class"); *Global Crossing*, 225 F.R.D. at 456 ("the proposed partial settlement would grant relief to all class members without subjecting them to the risks, complexity, duration and expense of continuing litigation.").  Therefore, Plaintiff submits that the Court should find that this first factor weighs in favor of the Settlement.

### C.   The Settlement is being thoroughly vetted by an Independent Fiduciary

Another factor the Court should take into consideration when evaluating this creative and extensively negotiated Settlement (preliminarily and finally) is the fact that a qualified and independent fiduciary, retained by the Plan, is and has been for some time thoroughly studying the Settlement's terms.  Courts evaluating settlements of similar claims have cited with approval independent fiduciary review of a settlement's terms. *See, e.g., Global Crossing*, 225 F.R.D. at 462 (noting that such review helps to drastically reduce "the likelihood of a collusive settlement between defendants and plaintiffs' lawyers at the expense of the plaintiff class[]").

---

*Co*., 457 F. Supp. 404 (S.D.N.Y. 1978), *aff'd in part, rev'd in part*, 603 F.2d 263 (2d Cir. 1979)).

As noted in the Settlement, the parties agree that they will comply with the terms of the Department of Labor's Exemption for the "Release of Claims and Extensions of Credit in Connection with Litigation," PTE 2003-39 (68 Fed. Reg. 75632 (Dec. 31, 2003)).  To do so, the Retirement Committee of the Plan, by agreement of Plaintiff's counsel, has retained U.S. Trust to serve as an independent fiduciary.  U.S. Trust has advised the Parties that their review of the settlement will be complete in the near future and a preliminary report should be forthcoming soon.  The parties will convey both of these reports to the Court forthwith.

## II.  THE PROPOSED NOTICE PLAN AND THE CLAIMS PROCEDURE SHOULD BE APPROVED BY THE COURT

### A.  Description of Notice Plan

The proposed Notice Plan will fully apprise Settlement Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The Notice Plan consists of multiple components designed to reach class members.  First and foremost, Plaintiffs, with the aid of Defendants, will mail a copy of the Notice[9] by first class mail to the current or last known addresses of all class members.  Further, Plaintiff will publish the Notice on a website dedicated to this settlement.[10]  This plan is specifically formulated to reach as much of

---

[9]  The proposed form of Notice is attached as Exhibit D to the Settlement Agreement, which is itself Exhibit 1 of the Meltzer Affidavit.

[10]  As noted above, Plaintiffs' dedicated Settlement website will also allow Plan participants to view a summary description of the settlement, read a description of the status of the case, access the Settlement Agreement and related Settlement documents, review answers to "frequently asked questions" regarding the litigation and settlement,

the target audience as possible.  Moreover, the number of exposure opportunities to the Notice information is adequate and reasonable under the circumstances and consistent with standards employed in notification programs designed to reach unidentified members of settlement groups or classes.

The Notice itself provides even more detailed information about the proposed Settlement, including a comprehensive summary of its terms, a summary of the (potential) requested attorneys' fees, litigation costs and Plaintiff incentive awards, and detailed information on the terms of the releases of claims.  In addition, the Notice provides information about the Final Fairness Hearing date, Settlement Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information.

All facets of the Notice Plan will provide potential class members with contact information for class counsel.

### B.     The Proposed Notice Plan and Claims Procedures Meet the Requirements of Due Process

Plaintiff believes that the combination of first class direct mail and an Internet website publication will result in a very high percentage of actual notice to affected participants and beneficiaries.  This ensures that the proposed notices and notice plan not only meet but exceed the mandates of due process.

---

and send email requests for further information or additional questions.  Plaintiff's counsel has reserved www.adcerisasettlement.com as the website dedicated to the Settlement.

In order to satisfy due process considerations, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). As several courts have noted, the nature of an ERISA class action brought on behalf of a plan prevents permitting members of the class to opt out. *See Gruby v. Brady*, 838 F. Supp. 820, 827 (S.D.N.Y. 1993) ("as Fund participants may bring an action only in a representative capacity on behalf of the entire Fund, the proposed class must include all Fund participants").

Nonetheless, courts typically require notice to absent class members in such breach of fiduciary duty actions under ERISA, as well as the opportunity for them to object to the proposed settlement. Accordingly, the form of notice must be sufficient to accomplish this purpose. However, as the Second Circuit has noted, "it is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual**,** so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential*, 164 F.R.D. 362 at 368; *See also Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). "For non-opt-out cases, such as the ERISA Actions, Rule 23 requires only such unspecified appropriate notice as the court may direct." *Global Crossing*, 225 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(c)(2)(A)). Here, the forms and methods of notice of proposed settlement agreed to by the parties satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1)(B).

The proposed notice forms are similar to those successfully used in numerous other class settlements.  As with the those approved notices, the Notice "fairly, accurately, and neutrally describe the claims and parties in the litigation, the terms of the proposed settlement and the identity of persons entitled to participate in it," and apprise affected consumers of their options with regard to the proposed settlement, thus fulfilling due process requirements.  *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1988), cert. denied, 498 U.S. 972 (1988).  *See also Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306 (1950); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Similar notice plans to the instant utilized in the settlement of analogous actions have been judicially approved as appropriate, fair and adequate.  *See, e.g.*, *In re WorldCom, Inc. ERISA Litig*., No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, *15-*16 (S.D.N.Y. Oct. 18, 2004); *Global Crossing*, 225 F.R.D. at 448-49 (noting that a Notice Plan similar to the one proposed here "went well beyond the requirements for the non-opt-out ERISA classes").[11]  Class counsel respectfully submit that adequate notice will be provided to prospective class members in this matter.

## III.   CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Plaintiff, pursuant to the Settlement Agreement, seeks certification of the following class for settlement purposes only:

> All persons who were participants or beneficiaries in the Plan at any time between February 24, 2000 and October 26, 2005

---

[11] Plaintiff can provide the Court with examples upon request.

and whose accounts included investments in ADC stock or
the ADC Stock Fund (excluding Defendants).

Additionally, the parties stipulate to the conditional amendment of the pleadings to allow

Michael Anderson to be a named plaintiff and class representative for settlement

purposes only.  Further, the parties agree to the conditional certification of a settlement

class to be certified as a non-opt out class under Fed. R. Civ. P, 23(b)(1) and 23(b)(2).

Under Rule 23 of the Federal Rules of Civil Procedure, the Court must engage in a

two-step analysis in order to determine whether it should certify class action for

settlement purposes.  Rule 23(a) sets forth four prerequisites to class certification,

typically referred to as:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy

of representation.  *Marisol A.  v. Giuliani*, 126 F.3d 372 (2d Cir. 1997).  In addition,

Plaintiffs must satisfy the requirements of one or more of the three subsections of Rule

23(b).  Here, Plaintiffs can easily satisfy the prerequisites of Rule 23(a), as well as the

alternative requirements of Rule 23(b)(1) or 23(b)(2).

As stated above, this Court issued an opinion on September 15, 2005 regarding

Plaintiff's Motion to Certify the Class.  Defendants did not challenge that the then-

proposed class met the "numerosity" requirement under Rule 23(a) or that the proposed

class representative brought claims that were "typical" of the rest of the proposed Class.

Therefore the Court found these prerequisites satisfied.  Further, the Court held that this

class action most appropriately falls under Rule 23(b)(1) as Defendants were alleged to

have treated all class members similarly – the alleged fiduciary breaches affected each

member of the proposed class and the alleged misrepresentations of Defendants were

disseminated to all class members.

### A.    Plaintiffs Have Satisfied All Prerequisites for Class Certification

Plaintiff clearly meets the requirements for certification under Fed. R. Civ. P. 23.

Judge Tunheim of this District recently reviewed the criteria for class certification:

> The Court assumes a familiarity with the requirements of
> class certification and only briefly reviews those
> requirements.  Federal Rule of Civil Procedure 23 sets forth
> the requirements for class action certification.  For a class to
> qualify for certification, each of the requirements of Rule
> 23(a) must be satisfied.  Rule 23(a) requires the proponents of
> certification to establish each of the following: (1) that the
> members of the proposed class are so numerous that joinder
> of the individual claims would be impracticable; (2) that there
> is commonality among issues of law or fact raised by the
> class members; (3) that the claims of the proposed class
> representatives are typical of the claims of the class members;
> and (4) that the proposed class representatives will adequately
> represent the interests of the class.
>
> If all requirements of 23(a) are satisfied, the class proponents
> must also satisfy one of the three requirements of 23(b).  Rule
> 23(b) identifies three different types of class actions, and the
> proposed class must fit into one of those three "types."

*In re St. Jude Med., Inc*., 2004 U.S. Dist. LEXIS 149, 5-6 (D.Minn. 2004).  This court has

broad discretion to determine whether the class should be certified. *Darms v. McCulloch*

*Oil Corp*., 720 F.2d 490 (8th Cir. 1983).  Using this discretion, courts interpret Rule 23

liberally to effectuate its policy of fostering the class-wide resolution of similar claims

against a common defendant. *See, e.g*., *Donaldson v. Pillsbury Co*., 554 F.2d 825, 831

(8th Cir. 1977) ("We are committed to the proposition that Rule 23 should be liberally

construed . . ."); *Buchholtz v. Swift & Co*, 62 F.R.D. 581, 595 (D.Minn. 1973) ([A]s

remedial legislation, Rule 23 has generally been accorded a liberal interpretation."); *see also* 3B Moore's Federal Practice P 23.02[4], at 23-70 and 71 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir. 1968)("Any type of civil claim, federal or state, may be maintained as a class action in federal court, and Rule 23 should be liberally construed and applied.").

This ERISA action is clearly appropriate for certification as a class action;[12] each of these prerequisites are satisfied.

### 1.    Rule 23(a)(1) – "Numerosity"

In order to demonstrate numerosity, plaintiffs must show that joinder is 'impracticable,' not that it is 'impossible.'"   *In re WorldCom, Inc. Secs. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) (*citing Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Global* Crossing, 225 F.R.D. at 451 (finding the numerosity standard had been met in a directly analogous ERISA breach of fiduciary duty case).   In *Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982), the Eighth Circuit cited with approval cases certifying classes of sixteen and eighteen members on grounds, in part, that joinder was impracticable. *Id.* at 561 (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members); *Crenshaw v. Maloney*, 13 Fair Empl. Prac. Cas. (BNA) 154, 155 (D.Conn. 1976) (sixteen class members)).   In

---

[12] Courts across the country have certified very similar actions to this breach of ERISA fiduciary duty action.  *See e.g.*, *In re WorldCom, Inc. ERISA Litig.*, Master File 02 Civ. 4816 (DLC), 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 4, 2004); *In re CMS Energy ERISA Litig.*, Master File No. 02-CV-72834 (E.D. Mich. Dec. 27, 2004) (Opinion and Order); *Rankin v. Rots*, 220 F.R.D. 511, 522-23 (E.D. Mich. 2004); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000); *Furstenau v. AT & T Corp.*, No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004).

*Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971), the Eighth

Circuit held that a class of twenty was sufficient to satisfy the numerosity requirement.

"Indeed, numerosity is presumed at a level of 40 members." *Consol. Rail. Corp. v. Town*

*of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (*citing* 1 Herbert Newberg & Albert

Conte, *Newberg on Class Actions* § 3:05 (2d ed. 1985)).

 According to the Plan's Summary Annual Reports to the Department of Labor,

there were 11,068 participants in or beneficiaries of the Plan as of December 31, 2000,

8,682 participants or beneficiaries as of December 31, 2001, and 6,490 as of December

31, 2002. *See* Complaint, n. 7.   Thus, not only does the sheer size of the prospective

Class make joinder most impracticable, but the geographic dispersion of the putative

class members who have been laid-off by ADC (and likely sought employment in other

areas of the country) is another factor lending to a finding for numerosity.  The Rule's

"numerosity" requirement is therefore satisfied.  There is no question that joining all

members of the Class would be impracticable.

  **2. Rule 23(a)(2) – "Commonality"**

 The threshold commonality inquiry is whether there are any questions of fact or

law that are common to the class.  Fed. R. Civ. P. 23(a)(2).  A common nucleus of

operative facts is usually sufficient to satisfy the commonality requirement.  *See Scott v.*

*Aetna Servs., Inc.*, 210 F.R.D. 261, 267 (D. Conn. 2002).  *See also Marisol A.  v.*

*Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if

plaintiffs' grievances share *a* common question of law or fact) (emphasis added); *In re*

*"Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).  Courts in this

District have analyzed commonality in the following manner:

> All such questions need not be common to every member of
> the class. See *Paxton v. Union National Bank*, 688 F.2d 552,
> 561 (8th Cir. 1982); . . . 23(a)(2) may be satisfied where the
> course of conduct leading to a cause of action affects all class
> members and at least one of the elements for that cause of
> action is shared by the class members. See *Forbush v. J.C.
> Penney Co., Inc*., 994 F.2d 1101, 1106 (5th Cir. 1993)(finding
> commonality despite the fact that four different pension plans
> were involved); *Lockwood*, 163 F.R.D. at 575 (citing
> Newberg, Class Actions § 3.10 at 3-50) . . . Commonality
> exists if "the question of law linking the class members is
> substantially related to the resolution of the litigation even
> though the individuals are not identically situated." *Paxton*,
> 688 F.2d at 561 (citation omitted); *see also Coley*, 635 F.2d at
> 1378.

*Smith v. United Healthcare Servs.*, No. 00-CV-1163, 2002 U.S. Dist. LEXIS 2140, *9-11

(D. Minn. 2002)(Class certification granted on ERISA claim where there were over one

million subscribers affected by an allegedly improper billing practice and interpretation

of plan language applied equally to similarly situated subscribers).

   This requirement "is not demanding" and is easily satisfied in the context of an

ERISA action.  *See Global Crossing*, 225 F.R.D. at 451 (finding numerous questions of

law or fact common to members of ERISA settlement class).  Indeed, "the question of

defendants' liability for ERISA violations is common to all class members because a

breach of fiduciary duty affects all participants and beneficiaries."  *Banyai v. Mazur*, 205

F.R.D. 160, 163 (S.D.N.Y. 2002).  This ERISA case undoubtedly satisfies the

commonality requirement.  Here, numerous common questions exist with respect to each

member of the proposed class, and include, *inter alia*, the following:

a.      whether Defendants were fiduciaries of the Plan and/or the participants;

b.      whether Defendants breached their fiduciary duties;

c.      whether the Plan and the participants were injured by such breaches; and

d.      whether the Plan and the Class is entitled to damages and injunctive relief.

"All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants. *Moore v. Simpson*, No. 96-CV-2971, 1997 U.S. Dist. LEXIS 13791, *9-10 (N.D. Ill. Sept. 5, 1997); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786, *7-8 (S.D.N.Y. Oct. 4, 2004).

ERISA actions, by their very nature, often present common questions of law and fact, and are, therefore, frequently certified as class actions.  "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. at 163 (*citing Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993). Courts frequently find commonality in class actions brought under ERISA.  *See, e.g, Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272. *2 (E.D. Pa. Mar. 11, 2003) (finding that in ERISA breach of fiduciary duty case, the existence of common issues was obvious); *Amara v. CIGNA Corp.*, No. 01-CV-2361, 2002 U.S. Dist. LEXIS 25947 at *8-9 (D. Conn. Dec. 20, 2002) (noting that ERISA cases turn on core questions of law); *Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 22, 2001) (finding common issues of fact and law presented in breach of fiduciary duty

case, noting "[t]he relationships among the parties . . . are governed by written plan documents under the standards set by ERISA").

Indeed, even issues of damages[13] and reliance[14] do not preclude class certification. *Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 214 (D.N.J. 2004); *Feret v. Corestates Fin. Corp*, No. 97-CV-6759, 1998 U.S. Dist. LEXIS 12734, *22-*35 (E.D. Pa. Aug. 18, 1988) (finding commonality requirement met in analogous action, notwithstanding individual questions of reliance and damages).  Consequently, Plaintiff clearly demonstrates a level of commonality which is more than sufficient under Rule 23(a)(2).

---

[13]   *See Ikon*, 191 F.R.D. at 463-65 (finding commonality in directly analogous case despite potential differences in calculating damages among class members); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 192 (D.N.J. 2003) (noting damages can be addressed after determination of liability on class-wide basis has been made); *Furstenau*, 2004 U.S. Dist. LEXIS 27042, at *9 (declining to limit class to only purchasers of company's stock in retirement plan and holding ERISA does not place any such "limitation on the scope of liability of fiduciaries").

[14]   *See Furstenau*, 2004 U.S. Dist. LEXIS 27042, at *6 (collecting cases and asserting that district courts have agreed with the proposition that individual reliance does not defeat commonality); *In re Honeywell Int'l ERISA Litig.*, No. 03-CV-1214, 2004 U.S. Dist. LEXIS 21585, *52 (D.N.J. Sept. 14, 2004)*; Ikon I*, 191 F.R.D. at 463-65; *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("*Eisenberg*") (rejecting argument that individual questions regarding reliance of each investor in class predominated over common issues, and noting contrary conclusion would preclude class actions for securities fraud).

For all of these reasons, as well as for the reasons set forth in the typicality discussion below,[15] Plaintiff's claims are common to the claims of the class in accordance with Rule 23(a).

### 3.        Rule 23(a)(3) – "Typicality"

Typicality exists where the "claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Global Crossing*, 225 F.R.D. at 452 (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)); *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims").

In the  Eighth Circuit, "the 'burden of demonstrating typicality is fairly and easily met so long as other class members have claims similar to the named plaintiff . . . [and] this typicality is not altered by the different mortgage instruments held by class members. The relief sought in the action is the same regardless of the amount of overage in any particular account.'" *Farthing v. United Healthcare of the Midwest, Inc.*, No. 98-Cv-4, 2000 U.S. Dist. LEXIS 21995, *11-12 (W.D. Mo. 2000) (quoting *DeBoer v. Mellon*

---

[15] *See Marisol A.  v. Guiliani*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)").

*Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995).  In addition, there is no requirement that the circumstances of the named Plaintiffs and the potential class be entirely identical:

> The claims or potential defenses need not be identical, and typicality usually will be satisfied if the claims or defenses of the representatives and the class stem from the same events or rest on the same legal theories.  When the claims or defenses of the representatives and the class are based on the same course of conduct or legal theory, it is thought that the representatives will advance the interest of the class members by advancing his or her own interests.

Typicality, therefore, is often met in putative class actions brought for breaches of fiduciary duty under ERISA.  *See e.g., Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 at *9 (S.D.N.Y. Mar. 23, 2001) (finding typicality of claims in analogous action where named plaintiff was ERISA plan participant during putative class period and plan's fiduciaries treated all participants alike); *Global Crossing,* 225 F.R.D. at 452 (finding typicality of claims: "the class representatives' and the class members' claims arise from the same alleged course of conduct are based on the same legal theories"); *IKON*, 191 F.R.D. at 465 (finding typicality of claims: "the named plaintiffs and the putative class would necessarily allege a similar course of conduct; that IKON and the individual defendants failed to provide accurate information in violation of ERISA obligations"); *In re CMS Energy ERISA Litigation*, 225 F.R.D. 539, 543 (E.D. Mich. 2004) (holding in a directly analogous action that since plaintiffs alleged that defendants' breaches of fiduciary duty regarding investment in employer securities affected all plan participants the proposed class representatives met the "typicality" requirement).

Here, Plaintiff's claims are clearly typical of those of the proposed Class.  Plaintiff was an employee of ADC, a participant of the Plan during the Class Period, and had part of his individual plan investment portfolio invested in ADC stock during that time.  All of the settlement class members sustained the same injury described in the Complaint arising out of Defendants' alleged wrongful conduct, *i.e.*, by breaching their fiduciary duties and violating ERISA during the Class Period as described herein and in the Complaint.  Further, Plaintiff (and each member of the proposed class) is entitled under ERISA to bring a claim for Plan-wide relief.  *See* 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan).  Accordingly, Plaintiff's claims are typical of the claims of the Class within the meaning of Rule 23(a)(3).

### 4.      Rule 23(a)(4) – "Adequacy"

The adequacy of representation requirement is met when the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  In making this determination, the Court must consider (1) whether the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) whether each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *Mathers v. Northshore Mining Co*., 217 F.R.D. 474 (D.Minn. 2003).

Plaintiff Michael Anderson (the proposed representative of the Settlement Class) has no interests that are antagonistic to those of the absent class members.  By pursuing this litigation, Plaintiff has and will necessarily advance the common interests of all other class members, as described in the discussion of typicality above.  *See Kane v. United*

*Indep. Union Welfare Fund*, No. 97-CV-1505, 1998 WL 78985, *8 (E.D. Pa. Feb. 24, 1998) (finding adequacy in ERISA case: "plaintiffs seek to have the fiduciaries 'personally restore to the Fund any losses incurred.' . . . The named plaintiffs' interests are the same as those of the absentee class members: all seek to increase the value of the Fund").

Plaintiff has retained attorneys that are highly qualified, experienced and able to conduct complex class litigation. The law firms of Schiffrin & Barroway, LLP, Emerson Poynter, LLP, and Head, Seifert and Vander Weide have extensive experience litigating complex ERISA breach of fiduciary duty class actions. Plaintiff's counsel have successfully prosecuted literally dozens of ERISA and other complex class actions.[16]

Schiffrin & Barroway's ERISA litigation department is one of the foremost in the country, representing employees in ERISA actions and serving as Lead or Co-Lead Counsel in dozens of breach of fiduciary class actions directly analogous to the instant one, including: *In re Merck & Co. Inc., Securities, Derivative & "ERISA" Litigation*, MDL-1658, 05-2369 (D.N.J.); *Smith v. Delta Air Lines, Inc. et al*, 04-2592 (N.D. Ga.); *In re Raytheon ERISA Litigation*, Master File No. 03 CV 10940 (RGS) (D. Mass.); *In re Syncor ERISA Litigation*, No. 03-2446 (C.D. Cal.); *In re ADC Telecoms., Inc.*, No. 03-2989 (D. Minn.); *Hargrave v. TXU Corp., et al.*, 02-2573 (N.D. Tex.); *Gee v. UnumProvident Corp.*, 03-1552 (E.D. Tenn.); *In re Westar Energy Inc. ERISA Litigation*, 03-4032 (D. Kan.); *In re Polaroid ERISA Litigation*, No. 03-8335 (S.D.N.Y.); *Pettit v.*

---

[16] Please *see* the firm biographies of Schiffrin & Barroway, LLP and Emerson Poynter, LLP attached as Exhibits 2 & 3, respectively, to the Meltzer Affidavit.

*JDS Uniphase Corporation et al*, 03-4743 (N.D. Ca.); *In re Allegheny Energy, Inc. Securities Litigation*, 03-MD-1518 (D. Md.); *In re Mirant Corporation ERISA Litigation*, 03-1027 (N.D. Ga.); *Koch v. Loral Space & Communications Ltd.*, 03-9729 (S.D.N.Y.); *Lewis v. El Paso Corp.*, 02-4860 (S.D. Tex.); *In re BellSouth Corp. ERISA Litigation*, No. 02-2440 (N.D. Ga.); *In re AOL ERISA Litigation*, 02-8853 (S.D.N.Y.); *In re Bristol-Myers ERISA Litigation*, 02-10129 (S.D.N.Y.); and *In re Sears, Roebuck & Co. ERISA Litigation*, 02-8324 (N.D. Ill.).

Emerson Poynter is a national law firm with offices in Houston and Little Rock. The firm handles cases all across the United States and is also active in the prosecution of class action cases in Canada in consultation with select Canadian counsel.

The lawyers at Emerson Poynter have specialized in complex litigation for over fifteen years and have represented wealthy investors, institutional investors, public and private funds, individual investors, and consumers. During that time the Firm's lawyers have been instrumental in the recovery of hundreds of millions of dollars on behalf of clients and the classes represented.  The Firm's lawyers are leaders in prosecuting cases involving corporate malfeasance. Our cases against corporate boards involved in wrongdoing have resulted in tremendous changes in corporate governance in many major American companies, including Fortune 500 companies.

The Emerson Poynter firm is actively involved in numerous securities fraud complex class actions, shareholder derivative actions, and consumer litigation involving telecommunications companies in addition to the number of significant positions of leadership in ERISA/401K (retirement plan) actions such as the instant one.

Given the lack of conflict between Plaintiff and the Class and the retention of highly experienced and competent counsel, Plaintiff is an adequate Class representative.

### 5. The Class may be properly certified under Rule 23(b)(1) and/or (b)(2)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  It has oft been noted that the additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other. Newberg on Class Actions § 4.01 at 185 (1977).

Having established that Plaintiff unequivocally meets all of the requirements of Rule 23(a), the proposed settlement class meets the requirements of Rule 23(b), in particular subsections (b)(1) and (b)(2).

### a. The Proposed Class Meets the Requirements of Rule 23(b)(1)

Under Rule 23(b)(1), a class may be certified if:

> (1)   the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A)   inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B)   adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Therefore, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *IKON*, 191 F.R.D.

at 466.  Certifications under both sections of Rule 23(b)(1) are common in ERISA breach

of fiduciary duty cases because of the Defendants' alleged "unitary treatment" of the

individual members of the proposed Class.  *Id.* (citation omitted).  *See also* FED. R. CIV.

P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating that certification

under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large

class of beneficiaries).

Here, the Complaint alleges breaches of fiduciary duties under ERISA.  Therefore,

the only remedy available to Plan participants is Plan-wide relief, including the

restoration of losses to the Plan.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,

139-40 (1985).  Thus, actions such as the instant one for breaches of fiduciary duty under

ERISA are by law representative actions.  "Because of ERISA's distinctive representative

capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic

example of a (b)(1) class."  *Global Crossing*, 225 F.R.D. at 453 (certifying an exactly

analogous class of defined contribution plan participants for settlement); *see also Gruby

v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (holding that certification of a class

seeking relief for violations of ERISA was proper under Rule 23(b)(1)); *Banyai*, 205

F.R.D. at 165 (granting class certification under Fed. R. Civ. P. 23(b)(1)).[17]

---

[17] *See also Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004); *Kane v. United Indep.
Union Welfare Fund*, No. 97-CV-1505, 1998 WL 78985, at *9 (E.D. Pa. Feb. 24, 1998);
*Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003);
*Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 23,
2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001);
*IKON*, 191 F.R.D. 457; *Feret v. Corestates Fin. Corp.*, No. 97-CV-6759, 1998 U.S. Dist.
LEXIS 12734 (E.D. Pa. Aug. 18, 1988); *Specialty Cabinets & Fixtures, Inc. v. American
Equitable Life Ins.* Co., 140 F.R.D. 474, 479 (S.D. Ga. 1991); *Bunnion v. Consol. Rail.*

Given the unique "group-based" relief offered under ERISA for violations of fiduciary duties owed to participants in covered benefit plans, an action such as this one is a textbook case for class treatment under Rule 23(b)(1).  This basic point was elucidated concisely by the court in *IKON*, a case in which some of the plaintiff class' claims were breaches of fiduciary duty under ERISA highly analogous to those brought in this action:

> The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. . . . There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether IKON had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*IKON*, 191 F.R.D. at 466 (*citing Feret*, 1998 U.S. Dist. LEXIS 12734).  *See also Becher v. Long Island Lighting Co*., 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying ERISA fiduciary misrepresentation case under Rule 23(b)(1)(A) because multiple cases "could conceivably result in different courts reaching conflicting decisions"); *Furstenau*, No. 02-5409, at 8-9 ("Plaintiff seeks plan-wide relief, where success necessarily results in plan-wide relief and failure to prove breach of fiduciary duty would necessarily preclude actions by other plan participants.  If this Court did not certify the class, then Defendants would be exposed to multiple lawsuits and risk inconsistent decisions").

---

*Corp*., No. 97-CV-4877, 1998 WL 372644, *13 (E.D. Pa. May 14, 1998); *Babcock v. Computer Assocs. Int'l, Inc*., 212 F.R.D. 125, 131 (E.D.N.Y. 2003); *Clauser v. Newell Rubbermaid, Inc*., No. 99-CV-5753, 2000 WL 1053395, *6 (E.D. Pa. Jul. 31, 2000); *Montgomery v. Aetna Plywood, Inc*., No. 95-CV-3193, 1996 WL 189347, *5 (N.D. Ill. Apr. 16, 1996) (ERISA cases granting class certification under 23(b)(1)).

Because relief under ERISA for violations of fiduciary duties owed to participants in covered benefit plans is to the plan itself, rather than to individuals, an action such as this one is entirely appropriate for class treatment under Rule 23(b)(1). This point was succinctly stated in a case in which the plaintiff class also claimed breaches of fiduciary duty under ERISA:

> As plaintiffs are seeking relief on behalf of the Fund as a whole, the Court finds that prosecution of separate actions by individual Members would, indeed, create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications. Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly.

*Gruby*, 838 F. Supp. at 828. Indeed, as the U.S. Supreme Court has recognized, cases such as this are typical examples of Rule 23(b) actions. *See Ortiz v. Fibreboard* Corp., 527 U.S. 815, 834 (1999). The *Ortiz* court noted that Rule 23(b)(1)(B) actions guard against the risk of impairing the individual class member's ability to protect their interests, finding that:

> Classic examples of such a risk of impairment may, for example, be found in actions charging a 'breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust'. In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

*Id*. at 834 (quoting the Advisory Committee's Notes on FED R. CIV. P. 23).

Thus, although certification of the proposed Class is also appropriate under the other subdivisions of Rule 23(b), as the cases cited above clearly demonstrate, the Court should certify such a Class under Rule 23(b)(1).  *See, e.g., Reynolds v. National Football League*, 584 F.2d 280, 284 (8th Cir. 1978) ("When the choice exists between [23](b)(1) and [23](b)(3) certification, generally it is proper to proceed under (b)(1) exclusively in order to avoid inconsistent adjudication or a compromise of class interests").

### b.     The Proposed Class Meets the Requirements of Rule 23(b)(2)

Under Rule 23(b)(2), a class may be certified if:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Here, the proposed Class also satisfies the requirements of Rule 23(b)(2).  As noted repeatedly *supra*, Defendants' conduct (and the relief sought from the effects of it) in an ERISA breach of fiduciary duty case must apply on a class-wide basis to participants of the Plan as a whole.  *See, e.g., Global Crossing*, 225 F.R.D. at 453 (finding that class in an ERISA breach of fiduciary duty action satisfied all the requirements of Rules 23(a), (b)(1) and (b)(2)).  The benefit to the individual proposed Class members/Plan Participants, by way of a refurbished and lawfully run retirement plan, "would flow directly and incidentally" from the relief sought by the Plaintiffs.  *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (certifying a Rule 23(b)(2) class in an ERISA breach of fiduciary duty action and noting

that the monetary relief granted flowed directly from the declaratory relief sought by plaintiffs).

Because the Plaintiffs have satisfied all of the requirements under Fed. R. Civ. P. 23(a) and the requirements of Fed. R. Civ. P. 23(b)(1) and/or (2), this Court should conditionally certify the proposed class for purposes of this settlement, and direct that the Notice Plan be implemented.

### B.    Plaintiffs' Counsel easily meet the requirements of Rule 23(g)

In addition to the other requirements outlined above, there is another analysis that Rule 23 requires.  Rule 23(g) requires the Court to examine the capabilities and resources of Plaintiffs' Counsel to determine whether they will provide adequate representation to the Class.  Plaintiff's Counsel easily meet the dictates of Rule 23(g).

Here, as presented in detail above, Plaintiff's Counsel has done substantial work to identify or investigate potential claims in this action, and they have refined the allegations through the Complaint and in subsequent propounding/review of discovery.  Plaintiff's Counsel has investigated the allegations made in this action by interviewing witnesses, reviewing publicly-available information, reviewing/analyzing literally hundreds of thousands of pages of documents obtained from Defendants, deposing numerous Defendants, ADC and non-party witnesses and consulting with experts.  As described above, Plaintiff's Counsel has substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted in this action.  Hence, Plaintiffs' Counsel's extensive efforts in prosecuting this case, in combination with their in-depth knowledge, satisfy Rule 23(g).

48

Therefore, in sum, for purposes of effectuating this Settlement, this action should be certified as a class action under Rules 23 of the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and request this Court (1) preliminarily approve the Settlement, (2) conditionally certify the proposed class, (3) approve Plaintiffs' Notice and Notice plan, and (4) set a date for a Final Fairness Hearing.

Dated: July 7, 2007                    Respectfully Submitted,

**SCHIFFRIN & BARROWAY, LLP**


By:/s/  Joseph H. Meltzer                 

Joseph H. Meltzer
Edward W. Ciolko
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056

**EMERSON POYNTER LLP**
John G. Emerson
Scott E. Poynter
The Museum Center
500 President Clinton Ave, Suite 305
Little Rock, AR 72201
Ph.  501.907.2555
Fx.  501.907.2556

**Co-Lead Counsel for Plaintiff**

**HEAD, SEIFERT & VANDER WEIDE**
Vernon J. Vander Weide (No. 112173)
Thomas V. Seifert (No. 98863)
333 South Seventh Street, Suite 1140

Minneapolis, MN 55402-2422
Telephone: (612) 339-1601
Fax: (612) 339-3372

**Liaison Counsel for Plaintiff**

**SCOTT + SCOTT, LLC**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-3818
Facsimile: (860) 537-4432