## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

|  |  |  |
|---|---|---|
| IN RE ADC TELECOMMUNICATIONS, | ) | |
| INC. ERISA LITIGATION | ) | MASTER FILE: 03-CV-2989 |
| | ) | |
| | ) | ADM/FLN |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL ACTIONS | ) | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT
## <u>AND CERTIFICATION OF SETTLEMENT CLASS</u>

**SCHIFFRIN & BARROWAY, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

**EMERSON POYNTER LLP**
John G. Emerson
Scott E. Poynter
The Museum Center
500 President Clinton Ave, Suite 305
Little Rock, AR 72201
Telephone:  (501) 907-2555
Facsimile:  (501) 907-2556

**Co-Lead Counsel for Plaintiff**

**HEAD, SEIFERT & VANDER WEIDE**
Vernon J. Vander Weide (No. 112173)
Thomas V. Seifert (No. 98863)
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: (612) 339-1601
Facsimile: (612) 339-3372

**Liaison Counsel for Plaintiff**

## TABLE OF CONTENTS

I.   Introduction ........................................................................................ 1

II.  Background ........................................................................................ 3

   A. Procedural History .......................................................................... 3

   B. Plaintiff's Claims ............................................................................ 4

   C. Investigation of Plaintiff's Claims ................................................... 5

   D. Summary of the Investigation.......................................................... 5

III.  The Proposed Settlement .................................................................... 7

   A.  Settlement Negotiations................................................................... 7

   B.  Settlement Terms ............................................................................ 9

   C.  Effectuation of Notice .................................................................. 10

   D.  Plan of Allocation ........................................................................ 11

   E.  Lack of Objections ....................................................................... 13

IV.  Argument........................................................................................... 13

   A.  The Court Should Grant Final Approval to the Settlement as it is Fair,
       Reasonable, Adequate, and Negotiated at Arms' Length ............................ 13

      1.  Plaintiff's Counsel Thoroughly Investigated Plaintiff's ERISA Claims  13

      2.  The Parties Conducted Serious and Informed Negotiations at
          Arms' Length........................................................................... 14

      3.  Settlement Terms...................................................................... 15

   B.  The Proposed Settlement is Fair, Reasonable, and Adequate to the Class .. 15

      1.  The Law Favors and Encourages Settlements........................................ 15

i

2.  The Eight Circuit's Standards Governing Class Action Settlements ..... 18

3.  Plaintiff's Probability of Success Militates in Favor of Settlement ....... 19

    (a)  Liability Under Erisa ........................................................................ 19

    (b) Uncertainty as to Model for Damages Calculations ........................ 22

4.  Complexity, Expense, and Likely Duration of Litigation all Weigh in Favor of Settlement ................................................................................ 24

5.  The Settlement is being thoroughly vetted by an Independent Fiduciary ............................................................................................................... 26

6.  No Class Member Has Objected to the Settlement Terms or the Award of Attorneys' Fees and Expenses ............................................... 27

7.  The Risk of Maintaining Class Action Status Throughout the Trial ...... 28

8. Structural Changes to the Plan Provide Substantial Value ..................... 29

9. The Parties Reached Settlement After Extensive Discovery ................. 29

C.  The Court Should Certify the Settlement Class for Final Approval ........... 32

  1. The Requirements of Class Certification ............................................... 33

  2. The Proposed Class Meets the Requirements of Rule 23(a) ................. 35

    (a) The class is so numerous that joinder of all members is impracticable ............................................................................................................... 36

    (b)  There are questions of law or fact common to the class ................. 36

    (c)  The claims of the proposed class representatives are typical of those of the class ............................................................................... 38

    (d)  Michael Anderson has fairly and adequately protected the interest of the Class ...................................................................................... 39

  3.  The Class satisfies the criteria of Rule 23(b)(1) and (b)(2) ................... 41

(a) Certification under Rule 23(b)(1)(A) and (b)(1)(B) ........................ 41

(b) Certification under Rule 23(b)(2) ..................................................... 43

4.  Rule 23(g) ............................................................................................... 44

V.  Conclusion ....................................................................................................... 46

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arkansas Educ. Ass'n v. Board of Educ.,
   446 F.2d 763 (8th Cir. 1971) ............................................................. 35

Armstrong v. Board of Sch. Directors,)
   616 F.2d 305 (7th Cir. 1980 ............................................................... 16

Atwood v. Burlington Indus. Equity, Inc.,
   164 F.R.D. 177 (M.D.N.C. 1995) ...................................................... 34

Banyai v. Mazur,
   205 F.R.D. 160 (S.D.N.Y. 2002) ....................................................... 36

Becher v. Long Island Lighting Co.,
   164 F.R.D. 144 (E.D.N.Y. 1996) ....................................................... 38

Blue Chip Stamps v. Manor Drug Stores,
   421 U.S. 723 (1975) ........................................................................... 22

Bonime v. Doyle,
   416 F. Supp. 1372 (S.D.N.Y. 1976) .................................................. 23

Bradford v. Agco Corp.,
   187 F.R.D. 600 (W.D. Mo. 1999) ...................................................... 43

Bublitz v. E.I. duPont de Nemours & Co.,
   202 F.R.D. 251 (S.D. Iowa 2001) ...................................................... 34

Buchholtz v. Swift & Co.,
   62 F.R.D. 581 (D. Minn. 1973) ......................................................... 33

Bunnion v. Consol. Rail Corp.,
   No. 97-CV-4877, 1998 U.S. Dist. LEXIS 7727 (E.D. Pa. May 14, 1998)....... 34

In re CMS Energy ERISA Litig.,
   225 F.R.D. 539 (D. Mich. 2004)........................................................ 32

Caroline C. v. Johnson,
   174 F.R.D. 452 (D. Neb., 1996) ........................................................ 33

Carson v. Am. Brands, Inc.,
    450 U.S. 79 (1981) ................................................................. 17

In re Cendant Corp. Litig.,
    264 F.3d 201 (3d Cir. 2001) ................................................. 23

Chaffin v. Rheem Mfg. Co.,
    904 F.2d 1269 (8th Cir. 1990) ............................................. 37

In re Charter Commc'n Inc. Sec. Litig.,
    MDL No. 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30,
    2005) ...................................................................................... 16

Chatelain v. Prudential-Bache Sec., Inc.,
    805 F. Supp. 209 (S.D.N.Y. 1992) ..................................... 17

City of Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974) ................................................. 17

Clauser v. Newell Rubbermaid, Inc.,
    No. 99-CV-5753, 2000 U.S. Dist. LEXIS 10631 (E.D. Pa. July 31,
    2000) ...................................................................................... 34

In re Control Data Corp. Sec. Litigation,
    116 F.R.D. 216 (D. Minn., 1986) ........................................ 38

Crenshaw v. Maloney,
    13 Fair Empl. Prac. Cas. (BNA) 154 (D. Conn. 1976) ...... 35

Crowley v. Corning, Inc.,
    234 F. Supp. 2d 222 (W.D.N.Y. 2002) ............................... 20

Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,
    375 F.2d 648 (4th Cir. 1967) ............................................... 35

Darms v. McCulloch Oil Corp.,
    720 F.2d 490 (8th Cir. 1983) ............................................... 33

Diduck v. Kaszycki & Sons Contractors, Inc.,
    737 F. Supp. 792 (S.D.N.Y. 1990) ..................................... 34

Donaldson v. Pillsbury Co.,
    554 F.2d 825 (8th Cir. 1977) ............................................... 33

Donovan v. Bierwirth,
  754 F.2d 1049 (2d Cir. 1985) ...................................................................... 21, 22

Drexel v. Loomis,
  35 F.2d 800 (8th Cir. 1929) ................................................................................ 18

In re Duke Energy ERISA Litig.,
  281 F. Supp. 2d 786 (W.D.N.C. 2003) .............................................................. 20

E. Tex. Motor Freight Sys., Inc. v. Rodriguez,
  431 U.S. 395 (1977)............................................................................................. 37

Edmonds v. U.S.,
  658 F. Supp. 1126 (D.S.C. 1987).................................................................... 44

Eisen v. Carlisle & Jacquelin,
  391 F.2d 555 (2nd Cir. 1968) ........................................................................ 33

Esplin v. Hirschi,
  402 F.2d 94 (10th Cir. 1968) ......................................................................... 33

Feret v. Corestates Fin. Corp.,
  No. 97-CV-6759, 1998 U.S. Dist. LEXIS 12734 (E.D. Pa. Aug. 18,
  1998) .................................................................................................................. 34

Forbush v. J.C. Penney Co.,
  994 F.2d 1101 (5th Cir. 1993) ........................................................................ 36

In re Global Crossing Sec. & ERISA Litig.,
  225 F.R.D. 436 (S.D. N.Y. 2004) ............................................................Passim

Godshall v. Franklin Mint Co.,
  2004 U.S. Dist. LEXIS 23976 (E.D. Pa., 2004) ............................................... 42

Gottlieb v. Wiles,
  11 F.3d 1004 (10th Cir. 1993) ........................................................................ 17

Gruby v. Brady,
  838 F. Supp. 820 (S.D.N.Y. 1993) ................................................................. 34

Hull v. Policy Mgmt. Sys. Corp.,
  No. 00-CV-778-17, 2001 WL. 1836286 (D.S.C. Feb. 9, 2001) ...................... 20

vi

In re IKON Office Solutions, Inc.,
     191 F.R.D. 457 (E.D. Pa. 2000)..............................................................22, 32, 42

Ikon Office Solutions Sec. Litig,
     194 F.R.D. 166 (E.D. Pa. 2000).........................................................................44

Jones v. Nuclear Pharmacy, Inc.,
     741 F.2d 322 (10th Cir. 1984) ..........................................................................17

Kane v. United Indep. Union Welfare Fund,
     No. 97-CV-1505, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 23, 1998) . 34, 40

*Koch v. Dwyer*,
      No. 98-C 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 22, 2001)...........34, 42

Kolar v. Rite Aid Corp.,
     No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11,
     2003) ..................................................................................................................32

Little Rock Sch. Dist. V. Pulaski County Special Sch. Dist.,
     921 F.2d 1371 (8th Cir. 1990) ..........................................................................16

Mathers v. Northshore Mining Co.,
     217 F.R.D. 474 (D. Minn. 2003) .......................................................................39

In Re McKesson HBOC ERISA Litig.,
     No. 00-CV-20030, 2002 WL. 31431588 (N.D. Cal. Sept. 30, 2002)...............20

In re Michael Milken & Assoc. Sec. Litig.,
     150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................23, 27

Minolta Camera Prods. Antitrust Litigation,
     668 F. Supp. 456 (D. Md 1987).........................................................................17

Montgomery v. Aetna Plywood, Inc.,
     No. 95-CV-3193, 1996 U.S. Dist. LEXIS 4869 (N.D. Ill. April 15,
     1996) ..................................................................................................................34

Nelson v. IPALCO Enters., Inc.,
     No. 02-CV-477, 2003 WL. 23101792 (S.D. Ind. Sept. 30, 2003)....................32

Pa. Fed'n, Bdh. Of Maint. Of Way Employees v. Norfolk Southern Co.,
    No. 02-CV-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) ......... 25

In re PaineWebber Ltd. P'ships Litig.,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 18, 23

Paxton v. Union National Bank,
    688 F.2d 552 (8th Cir. 1982) ..................................................................... 35, 36

Petrovic v. Amoco Oil Co.,
    200 F.3d 1140 (8th Cir. 1999) .......................................................................... 27

Pettway v. Am. Cast Iron Pipe Co.,
    576 F.2d 1157 (5th Cir. 1978) .......................................................................... 27

Piazza v. Ebsco Indus., Inc.,
    273 F.3d 1341 (11th Cir. 2001) ........................................................................ 41

In re Providian Fin. Corp. ERISA Litig.,
    No. 01-CV-5027, 2003 U.S. Dist. LEXIS 26983 (N.D. Cal. June 30,
    2003) ................................................................................................................. 32

In re Prudential Ins. Co. of Am. Sales Practice Litig.,
    148 F.3d 283 (3d Cir. 1998) ............................................................................. 32

Rankin v. Rots,
    220 F.R.D. 511 (E.D. Mich 2004) .................................................................... 42

Reinhart v. Lucent Tech., Inc.,
    307 F. Supp. 2d 633 (D.N.J. 2004) .................................................................. 32

Schutte v. Maleski,
    No. 93-CV-0961, 1993 U.S. Dist. LEXIS 8332 (E.D. Pa. June 18, 1993) ....... 34

Smith v. Delta Air Lines, Inc.,
    422 F. Supp. 2d 1310 (N.D. Ga. 2006) ............................................................ 20

Smith v. United Healthcare Servs.,
    No. 00-CV-1163, 2002 U.S. Dist. LEXIS 2140 (D. Minn. Feb. 5, 2002) .. 36, 43

Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.,
    140 F.R.D. 474 (S.D. Ga. 1991) ................................................................. 34, 42

In re St. Jude Med., Inc.,
   No. 01-MDL-1396, 2004 U.S. Dist. LEXIS 149 (D. Minn. Jan. 5, 2004) . 33, 38

Summers v. State St. Bank & Trust Co.,
   453 F.3d 404 (7th Cir. 2006) ........................................................... 20

In re Syncor ERISA Litig.,
   410 F. Supp. 2d 904 (C.D. Cal. 2006) ............................................. 20

Thomas v. SmithKline Beecham Corp.,
   201 F.R.D. 386 (E.D. Pa. 2001) ................................................. Passim

U.S. v. 412.93 Acres of Land,
   455 F.2d 1242 (3d Cir. 1972) .......................................................... 23

In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,
   *718* F. Supp. 1099 (S.D.N.Y. 1989) ............................................... 16

Van Horn v. Trickey,
   840 F.2d 604 (8th Cir. 1988) ............................................... 17, 18, 27

In re Visa Check/Mastermoney Antitrust Litig.,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................. 17

In re Warfarin Sodium Antitrust Litig.,
   212 F.R.D. 231 (D. Del. 2002) ........................................................ 44

In re Warner Commc'n Sec. Litig.,
   618 F. Supp. 735 (S.D.N.Y. 1985) ............................................. 23, 27

Weinberger v. Thornton,
   114 F.R.D. 599 (S.D. Cal. 1986) ..................................................... 33

Weiner v. Klais & Co., Inc.,
   108 F.3d 86 (6th Cir. 1997) ............................................................ 42

White v. NFL,
   836 F. Supp. 1458 (D. Minn. 1993) ................................................ 16

Weiner v. Roth,
   791 F.2d 661 (8th Cir. 1986) .......................................................... 16

White v. Sundstrand Corp.,
  No. 98-CV-50070, 1999 U.S. Dist. LEXIS 15091 (N.D. Ill. Sept. 30,
  1999) .................................................................................................... 34

In re WorldCom, Inc. ERISA Litig.,
  No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 4,
  2004) .............................................................................................. 32, 33

In re WorldCom, Inc. ERISA Litig.,
  No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18,
  2004) .................................................................................................... 16

Wright v. Or. Metallurgical Corp.,
  222 F. Supp. 2d 1224 (D. Or. 2002), aff'd, 360 F.3d 1090 (9th Cir.
  2004) .................................................................................................... 20

## DOCKETED CASES

*Whetman v. IKON,*
  MDL No. 1318 (E.D. Pa.)........................................................................ 25

## FEDERAL RULES

68 Fed. Reg. 75632 (Dec. 31, 2003)). ...................................................... 26

Fed. R. Civ. P. 23 ............................................................................. passim

## MISCELLANEOUS

3B Moore's Federal Practice P 23.02[4], at 23-70 ................................. 33

Manual for Complex Litigation § 30.43 at 289 (3d ed. 2002) .............................. 18

*Newberg on Class Actions* § 3.01, at 3-4 (2004)..................................... 35

*NEWBERG ON CLASS ACTIONS* § 11:43 (2004) ................................. 19

*Newberg on Class Actions* § 4.01 (2004)............................................... 40

## I.    INTRODUCTION

Plaintiff James Carnahan ("Plaintiff" or "Carnahan") and proposed settlement class representative Michael Anderson respectfully submit this Memorandum in support of Carnahan's Motion for Final Approval of Settlement and Certification of Settlement Class.[1]  On July 14, 2006, the Honorable Judge Ann D. Montgomery for the United States District Court for the District of Minnesota issued an Order which preliminarily approved the proposed settlement of this ERISA action, conditionally certified a class of Plan participants for the purposes of settlement, and approved the form and manner of notice of settlement to Plan participants.  As set forth in detail below, there have been no objections to the terms of this Settlement and the parties have established all necessary prerequisites for its final approval.[2]

Judge Montgomery found the Settlement Agreement on its face to be fair, reasonable, and adequate, and to have been the product of serious, informed, and

---

[1] A copy of the "Settlement Agreement and Release " ("Settlement") and its Exhibits, including forms of individual and publication notice which the Court ultimately approved, was filed with the Court on July 7,  2006, together with Plaintiffs' Motion and supporting Memorandum for preliminary settlement approval.  The provisions of the Settlement, including all definitions and defined terms, are incorporated by reference herein.

[2] Plaintiff sets forth in this Memorandum and the other settlement documents various factors (factual and legal) that support the conclusion that the settlement that has been achieved in this matter is fair, reasonable, and adequate.  Plaintiff does not admit or stipulate to any of the factual, legal, or financial factors or conclusions discussed in this Memorandum which favor the Defendants, but rather merely acknowledges Defendants' positions, and recognizes, for settlement purposes only, that the Court could find that such factors exist and provide a sound basis for the approval of the settlement. Accordingly, none of the statements in this Memorandum and other settlement documents constitute admissions by or evidence against any party to this action or in any other action.

extensive arms' length negotiations among the parties.  Judge Montgomery also found there to have been a genuine controversy between the parties.  *Preliminary Approval Order*, ¶6.  Furthermore, the Court preliminarily approved class certification, specifically finding that Plaintiff met all the requirements of Fed. R. Civ. P. 23(a) and 23(b)(1) and (b)(2).  The Court also found that Michael Anderson was an adequate representative for the class and that Plaintiff's Counsel's representation in this matter has been fair and adequate.  *Id*. at ¶¶4.

The parties to this litigation have achieved a proposed settlement that is fair, reasonable and adequate, and provides substantial benefits to participants (the "Plan participants") in the ADC Telecommunications, Inc. Retirement Savings Plan (the "Plan").  Specifically, the settlement provides immediate economic benefit to the Plan participants in the form of a $3.25 million cash payment (less fees) and the implementation of significant and important Structural Changes to the Plan. Additionally, this settlement is appropriate because lawsuits of the type, pursuant to the Employee Retirement Act of 1974 ("ERISA") face significant risks.  On the one hand, Plaintiff and the Class risk failing to prove breaches of fiduciary duty in a complicated area of the law that is still unsettled.  On the other hand, Defendants risk very large sums of money in potential liability.  For these reasons, and for others detailed within this memorandum, the parties have agreed to a resolution that provides substantial benefits to the Class and certainty for all parties to the litigation.

## II.    BACKGROUND

### A.    Procedural History

On April 30, 2003, Lorraine L. Osborne filed her complaint against certain alleged fiduciaries of the Plan, including: ADC Telecommunications, Inc., William Cadogan, Robert E. Switz, B. Christine Johnson, John A. Blanchard, III, Jean-Pierre Russo, John D. Wunsch and American Express Trust Company.  Marjorie Malinski filed a similar complaint on May 21, 2003 against many of the same Defendants and including Richard R. Roscitt, Charles T. Roehrick, John J. Boyle, III and Charles D. Yost as additional Defendants.  On June 26, 2003, Plaintiff James A. Carnahan filed a similar complaint against the same Defendants.  By order of the Court entered October 2, 2003, the cases were consolidated and the Consolidated Complaint of ERISA Plaintiffs Lorraine L. Osborne, Marjorie Malinski and James A. Carnahan for Plan-Wide Relief Under the Plan was filed on November 26, 2003.  On May 4, 2005, Plaintiff moved this Court for an Order appointing Michael Anderson as an additional class representative.  Subsequently, Plaintiff amended his pleading based upon the parties' stipulation, and pursuant to the Court's order the operative amended complaint in this action was filed on January 25, 2005 (the "Complaint").  Thereafter, Plaintiff moved for class certification, which was partially granted on September 15, 2005.

Based upon the Court's opinion and order regarding class certification, Plaintiff Carnahan renewed his motion appointing Michael Anderson as an additional class representative on October 14, 2005.  While that motion was pending, the parties engaged

in a mediation and eventually reached a resolution of Plaintiff's claims.  Based upon the

parties' notice of settlement, the Court stayed the action pending approval of the

settlement in early November 2005.

**B.**     **Plaintiff's Claims**

Plaintiffs' claims arise from Defendants' violations of their ERISA-mandated

fiduciary duties of loyalty and prudence by: (1) investing an unreasonably large

percentage of the Plan's assets in Company stock when they knew or should have known

it was imprudent to do so;[3] (2) failing to adequately investigate and monitor the merits of

the investments in Company stock; (3) failing to take steps to eliminate or reduce the

amount of Company stock in the Plan; (4) promoting ADC common stock as a prudent

Plan investment and encouraging the Plan's participants to invest their retirement savings

in Company stock; (5) failing to adhere to the purposes of the Plan insofar as those

purposes were designed to assist participants in providing financial security for their

retirement; (6) failing to advise Plan participants that their investments in the Plan were at

substantial risk as a result of the high concentration of ADC Company stock as a

percentage of the Plan's total assets; and (7) failing to provide Plan participants with

accurate, truthful, or complete information about the Company's operations and true

financial condition.

---

[3] Plaintiff's Complaint contains a recitation of the circumstances at ADC, alleged to be known to fiduciaries, but kept from Plan participants, that made investment in its artificially inflated stock imprudent for the Plan.

**C.       Investigation of Plaintiff's claims**

Through counsel's investigation as well as through extensive direct and third party written and deposition discovery, Plaintiff obtained extensive documentation regarding the Plan and its performance, as well as non-public data regarding the Plan's investment in ADC Stock and ADC's business health, prospects, reporting and management during the relevant time period.  Plaintiff's Counsel has conducted a thorough investigation into Plaintiff's claims, the underlying events, facts, actions, and legal/factual allegations presented in the Complaint, and the operations and administration of the Plan.  This investigation included, *inter alia*, conducting individual interviews with Plan participants and employees, collecting, reviewing and analyzing tens of thousands of Plan and Company-related administrative, fiduciary review and asset management, business, inventory and other documents/communications, and analyzing potential damages. Plaintiff's Counsel also retained accounting, ERISA, fiduciary, and damages experts to review and consult with counsel on the financial and legal principles applicable to Plaintiff's claims and their factual predicates.

**D.       Summary of the Litigation**

The litigation of this matter was complex and hotly contested by Defendants from the outset.  The Defendants filed a motion to dismiss on February 2, 2004, triggering intensive briefing of complicated and novel issues on both sides.  Plaintiff filed a Response to Defendants' Motion to Dismiss on March 18, 2004, which was followed by Defendants' Reply on April 19, 2004.  The Court entertained oral argument regarding

Defendants' Motion to Dismiss on May 28, 2004. The Court issued an Order denying the motion on July 26, 2004.

As this Court is well aware, the discovery process in this matter was extensive and hard fought by all parties involved. Plaintiff served four sets of document requests on Defendants, seeking multiple categories of information. Defendants vigorously resisted document production, necessitating letters of inquiry and several lengthy and extensive conference calls attempting to resolve disputed issues. Simply, the parties held strong positions regarding the proper scope of paper/deposition discovery, and this litigation required numerous discovery motions, as well as appeals of orders.

Additionally, Plaintiff served four sets of *subpoenae* on third party witnesses, including American Express Trust Company, Watson Wyatt, Ernst & Young, LLP and Mercer Investment Consulting, Inc. In total, Plaintiff obtained, reviewed and analyzed tens of thousands of pages of documents/communications/electronic discovery related to the allegations in the Complaint. Plaintiff also served requests for admissions and two sets of interrogatories posing numerous, direct and discrete questions related to this litigation. Ultimately, Plaintiff was required to file a Motion to Compel regarding certain requests involved with the above referenced propounded discovery – and respond to and argue against numerous discovery motions by Defendants from early on and throughout the discovery process.

During the discovery phase of this litigation, Plaintiff provided responses to three sets of interrogatories (including multiple contention interrogatories), two sets of requests for production of documents and a set of requests for admission from Defendants.

Plaintiff Carnahan and Michael Anderson also provided testimony by way of deposition. Furthermore, Plaintiff's Counsel prepared for, led, attended and/or summarized the depositions of numerous fact witnesses and certain deponents noticed pursuant to Rule 30(b)(6) of the Company and third party witnesses.  In total, Plaintiff conducted more than 10 depositions, studied more than 160,000 pages of documents of discovery, studied thousands more pages of documents from public filings, conducted more than 100 interviews of former ADC employees, and consulted with four experts in areas of accounting, ERISA, fiduciary duties, and damages.

Expert discovery was also subject to motion practice.  Plaintiff filed a motion on September 1, 2005 to modify the scheduling order to allow Plaintiff to supplement his expert reports.  Defendants then filed a motion to exclude Plaintiff's expert reports on September 12, 2005.  Magistrate Judge Noel denied both motions on October 7, 2005, effectively precluding Plaintiff from presenting complete expert reports.  Plaintiff appealed the decision on October 11, 2005.  Defendants opposed the appeal.  Before the Court ruled on Plaintiff's motion, this matter was stayed to allow the parties to discuss settlement.

### III.    THE PROPOSED SETTLEMENT

### A.    Settlement Negotiations

The parties began informal discussions concerning possible settlement in the end of October, 2005.  These discussions led to a formal mediation session on October 26, 2005 with the Honorable Jonathan G. Lebedoff, an experienced mediator and former Magistrate Judge for the District of Minnesota.

In preparation for the October 26, 2005 mediation, the parties engaged in an extensive exchange of information and analysis regarding their respective settlement positions, including information relating to: the performance of Plan investments during the relevant period; insurance available to satisfy any possible judgment, including documents evincing the denial of coverage under the fiduciary insurance policy; and settlements in analogous cases.

The mediation session lasted all day and tested the resolve of all parties involved. Plaintiff submitted a Mediation Statement that outlined the claims asserted and the legal and factual basis for them.  Defense counsel did the same.  Plaintiff's counsel also prepared a PowerPoint presentation and presented it in the open session of the mediation. In the mediation session, both sides made oral presentations on the respective strengths and weaknesses of their positions.  Plaintiff contended in the strongest possible terms that Defendants breached ERISA fiduciary duties both by allowing and promoting plan investment in company securities at a time when it was clearly prudent not to do so and by failing to disclose material information about ADC stock to Plan participants. Defense counsel persistently denied that there was any merit at all to Plaintiff's claims, arguing that to the extent Defendants were Plan fiduciaries, they had breached none of their fiduciary duties.

Ultimately, after many hours of debate and arms' length negotiations, the parameters of final settlement terms were agreed upon.  However, reaching agreement on the specific terms of the settlement required several more weeks of exhaustive negotiations.  In short, the negotiations in this matter were intense, complex and vigorous

and both sides argued their respective positions strenuously. The resulting settlement was truly the product of arms' length bargaining.

## B.      Settlement Terms

The proposed Settlement provides for the payment by Defendants in the amount of three million two hundred fifty thousand dollars ($3,250,000.00) to a Settlement Fund. Further, the Settlement Agreement contains significant and highly valuable structural changes to the administration of the Plan and its investments. The Settlement Fund includes any award of Plaintiff's attorneys' fees and costs, payment to the Settlement Class members according to a plan of allocation to be approved by the Court, fees of an independent settlement fiduciary, case contribution awards to the named plaintiffs, and all costs of settlement administration (as set forth in the Settlement).

Further, ADC, at its own expense and without reimbursement from the Settlement Fund, will hire an independent advisor to advise the ADC Retirement Committee regarding the ADC Stock Fund, and to retain such an advisor for three years. In lieu of retaining an independent advisor, ADC or the ADC Retirement Committee may choose to retain a third-party fiduciary with respect to the ADC Stock Fund. Additionally, ADC, at its own expense and without reimbursement from the Settlement Fund, will provide fiduciary training for ADC Retirement Committee members on an annual basis for a three year period (unless ADC has retained a third-party fiduciary for the ADC Stock Fund or does not offer the ADC Stock Fund as a Plan investment alternative).

9

As a result of the Settlement, the Complaint will be dismissed with prejudice and the Class' (and the Plan's as brought by Plaintiff) claims will be released, as described in the Settlement Agreement.  Additionally, as described in detail in the Settlement Agreement, certain claims that have or could have been asserted by Defendants against Michael Anderson, James Carnahan, Robert Crew, Marjorie Malinski and Lorraine Osborne Devlin will be fully released.

**C.    Effectuation of Notice**

On July 7, 2006, Plaintiff filed his Motion for Preliminary Approval of Settlement with exhibits which included the proposed form of individual notice.  The Court preliminarily approved the Settlement by Order dated July 14, 2006.  The Order set out a schedule for dissemination of the approved form of notice, established the form, method and timing of any objection(s), and scheduled the Fairness Hearing for October16, 2006 at 11:00 a.m. to finally determine, among other issues, whether (1) the proposed class should be certified for settlement; (2) the settlement is fair, reasonable and adequate; (3) the approval of Plaintiff's Counsel's application for an award for attorneys' fees and expenses is warranted; and (4) Named Plaintiffs' Case Contribution Compensation should be paid.

Pursuant to the Court's Order preliminarily approving the Settlement, the approved Individual Notice of Class Action Settlement was sent to over 9,000 current and former participants of the Plan on August 3, 2006.  *See* Affidavit of Jose Fraga Regarding the Dissemination of the Notice ("Fraga Affidavit"), attached to Declaration of Scott E. Poynter in Support of Class Counsel's Motions for Final Approval of Settlement and an

10

Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Compensation ("Poynter Declaration").

Class Counsel also created a settlement website where Class Members can: (1) view a summary description of the settlement; (2) read a description of the nature of the case; (3) access the Settlement Agreement and related settlement documents; (4) review answers to "frequently asked questions" regarding the litigation and settlement; and (5) obtain an email address to which additional questions can be directed. *See* Poynter Declaration. The website, www.ADCerisasettlement.com,[4] became operational on August 3, 2006. *Id.* In addition, the long form notice provided the Plan's participants with a toll-free number to reach Class Counsel, as well as a dedicated email address for Class members to direct their inquiries. *Id.*

In total, with the website receiving over 725 "hits," and Class Counsel responding to over 330 telephone and email inquiries, it is clear that notice was properly effectuated in this action. *Id.*

**D.      Plan of Allocation**

The Plan of Allocation will be filed contemporaneously with the Motion for Final Approval of Settlement and for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Compensation.

The allocation will be calculated as summarized herein. Prior to the transfer of the Distributable Settlement Fund to the Plan, ADC shall request Ameriprise Trust Company

---

[4] The Internet address of the website was provided in both the Individual and Publication notices.

("Ameriprise") to determine the amount to be distributed to each Class Member, which will depend on certain factors. Each Class Member who met the qualifications of a Class Member on or before March 31, 2001, shall be assigned two points (those receiving two points are hereinafter referred to as "Group A"). Each Class Member who met the qualifications of a Class Member after March 31, 2001, shall be assigned one point (those receiving one point are hereinafter referred to as "Group B"). The points assigned shall be totaled.

The Distributable Settlement Fund shall be allocated among Class Members by dividing the individual Class Member's number of points by the total number of points allocated to all Class Members and then multiplying the resulting fraction (the numerator of which is the individual Class Member's number of points and the denominator of which is the total number of points allocated to all Class Members) by the amount of the Distributable Settlement Fund, the product of which shall be the "Per Member Allocation." For example, if the total number of Class Members is 12,000, and if 1,000 of those 12,000 Class Members first became Class Members after March 31, 2001, then the total number of points would be 23,000 ([11,000 x 2] + [1000 x 1 = 23,000]), and a Class Member joining the Plan on or before March 31, 2001, will receive a 2/23,000 share in the Distributable Settlement Fund. However, a Class Member investing in the Plan after March 31, 2001, will receive less, receiving 1/23,000 in the Distributable Settlement Fund.

Promptly after deposit of the Distributable Settlement Fund into the Plan in accordance with Section 5(g) of the Settlement Agreement, ADC shall request

Ameriprise to cause to be allocated to each Current Participant's account his or her Per Member Allocation as calculated above less any expenses or administrative charges approved by the Court. Each Current Participant's allocation shall be invested in the RiverSource Trust Stable Capital Fund II. Promptly after deposit of the Distributable Settlement Fund into the Plan in accordance with Section 5(g) of the Settlement Agreement, ADC shall request Ameriprise to create a new account for each Former Participant, and allocate to each such account the Former Participant's Per Member Allocation as calculated above less any expenses or administrative charges approved by the Court. Each Former Participant's allocation shall be invested in the RiverSource Trust Stable Capital Fund II. The Former Participants' new accounts shall be subject to all the terms of the Plan, including terms that may mandate the time and manner of distribution based on the amount of assets held in the account.

**E.      Lack of Objections**

To date, *no* Class Members have filed objections to the Settlement, notwithstanding the fact that, as detailed above, Class Counsel have gone above and beyond the normal mandates of effectuating proper notice.

## IV.    ARGUMENT

**A.      The Court Should Grant Final Approval to the Settlement as it is Fair, Reasonable, Adequate, and Negotiated at Arms' Length.**

### 1.      Plaintiff's Counsel Thoroughly Investigated Plaintiff's ERISA Claims

Plaintiff's Counsel conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operations and

administration of the Plan.  This investigation included interviews and depositions with members of the purported class and former agents and employees of ADC.  Additionally, Plaintiff's Counsel reviewed over one-hundred thousand pages of documents produced by Defendants in discovery, as well as documents obtained from public sources and the files of putative class members.  Further, Plaintiff's Counsel retained four experts who made a thorough study of the principles and theories applicable to Plaintiff's claims, as well as the benefits to the Class of the proposed settlement.

**2.      The Parties Conducted Serious and Informed Negotiations at Arms' Length**

As noted above, on October 26, 2005, the parties conducted formal settlement discussions with the assistance of the Honorable Jonathan G. Lebedoff through mediation in Minneapolis.  Plaintiff's counsel submitted a researched and informed mediation memorandum.  Plaintiff's counsel also prepared a presentation for the mediation, including PowerPoint presentation slides.

Plaintiff maintained throughout the mediation that Defendants breached ERISA fiduciary duties both by allowing and promoting plan investment in company securities at a time when it was clearly prudent not to do so and by failing to disclose material information about ADC stock to Plan participants.  Defense counsel persistently denied that there was any merit at all to Plaintiff's claims, arguing that to the extent they were Plan fiduciaries, Defendants had breached none of their fiduciary duties.  However, the parties were able to acknowledge potential weaknesses in their positions, and, by the end of the mediation, were able to reach an agreement in principle.

However, the details of the Settlement required further hard fought negotiation and

a final Settlement Agreement was not reached until July 2006.  Finally, Defendants agreed to a cash payment to the Class along with Plan structural changes which will provide an independent advisor for the ADC Stock Fund within the Plan, and for additional fiduciary training.  The terms of this final Settlement Agreement are discussed below in greater detail.

### *3.*     Settlement Terms

As described exhaustively above, pared down to its simplest terms, the settlement for which the parties seek approval contains three basic components:

> a) A settlement fund of $3,250,000, plus interest;
>
> b) An agreement by ADC retaining an Independent Advisor to advise the Plan's Retirement Committee regarding that ADC Stock Fund or ADC or the ADC Retirement Committee retaining an independent (third party) fiduciary, in lieu of an independent advisor, with respect to the ADC Stock Fund for three years.
>
> c) An agreement by ADC to provide, at its own expense, fiduciary training for the Plan administrator, the ADC Retirement Committee, on an annual basis for three years.

## B.     The Proposed Settlement is Fair, Reasonable, and Adequate to the Class

### 1.     The Law Favors and Encourages Settlements

Because this action is a class action, Plaintiff presents this Settlement to the Court for its review under Fed. R. Civ. P. 23, which provides in pertinent part:

> (e)     Settlement, Voluntary Dismissal, or Compromise.
>
>> (1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

Federal courts strongly favor the voluntary resolution of complex class actions. *White v. NFL*, 836 F. Supp. 1458, 1476, (D. Minn. 1993), *citing Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 at * 24 (S.D.N.Y. Oct. 18, 2004); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718* F. Supp. 1099, 1103 (S.D.N.Y. 1989) (compromise is particularly appropriate in complex class actions); Newberg & Conte, Newberg on Class Actions §11.41 (3d ed. 1992). In class actions in particular, "there is an overriding public interest in favor of settlement." *In re Charter Commc'n Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772 * 15 (E.D. Mo. June 30, 2005) *citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Little Rock Sch. Dist. V. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1391 (8th Cir. 1990) (holding that the policy favoring settlement is so strong that such settlement agreements are "presumptively valid"). Furthermore, "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Commc'n Inc. Sec. Litig.,* 2005 U.S. Dist. LEXIS 14772 at * 19*citing Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). The district court has discretion in evaluating a class action settlement, and its decision will not be overturned unless an abuse of

discretion is shown.  *White v. NFL* at 1476-77, *citing Weiner v. Roth*, 791 F.2d 661, 662 (8th Cir. 1986) (*per curiam*).

The Court has wide discretion in determining whether to approve a class action settlement, however the Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n. 14 (1981), *See also*, *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 462 (2d Cir. 1974).  *Accord In re Visa Check/Mastermoney Antitrust Litig*., 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003).  Because the object of the settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ("the court need not undertake the type of detailed investigation that trying the case would involve.").  Instead, the Court's inquiry should be limited to the consideration of whether the proposed settlement is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)(citing *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984)).  Rather, when experienced counsel have negotiated and presented a settlement that has been negotiated at arm's-length in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.  *Minolta Camera Prods. Antitrust Litigation*, 668 F. Supp 456, 460 (D. Md 1987); *Chatelain v. Prudential-Bache Sec., Inc*., 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel

after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

This initial presumption of fairness and adequacy applies with special force here because the Settlement was reached by experienced, fully-informed counsel after protracted and intense arm's-length negotiations.  "So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).  *See also* Manual for Complex Litigation § 30.43 at 289 (3d ed. 2002); Newberg & Conte, Newberg on Class Actions § 11.42 (3d ed. 1992); 3B Moore's Federal Practice ¶ 23.1.24[2] (2d ed. 1992).  In addition, no question exists that Plaintiff's Counsel was fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.  Thus, this Settlement is entitled to the initial presumption of fairness.

**2.      The Eighth Circuit's Standards Governing Class Action Settlements**

"In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'"  *Van Horn v. Trickey,* 840 F.2d at 606 (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)).  "'In exercising its discretion, the District Court must consider all factors bearing on the fairness of the settlement, including (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection[5]; (c) the complexity of the litigation

---

[5] This factor does not play a role in this settlement:  There is no question that ADC is solvent, and could pay damages as found by the court.

involved, and the expense, inconvenience and delay necessarily attending it; (d) the

paramount interest of the [class members] and a proper deference to their reasonable

views in the premises.' *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir. 1929)", cited with

approval in *In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135 (8th Cir. 1984).[6]

*See also NEWBERG ON CLASS ACTIONS* § 11:43 (2004) (recommending essentially

identical factors for evaluation of a class action settlement).

When analyzed under the specific circumstances present in this case, all of these

factors militate in favor of approving this settlement.  Plaintiff addresses them in turn.

### 3.  Plaintiff's Probability of Success Militates in Favor of Settlement

#### a)  *Liability Under ERISA*

Despite the strengths of Plaintiff's case at the time it was filed, Plaintiff faces

numerous hurdles to establishing Defendants' liability and proving the existence and the

extent of any damages to the Plan and the Class.  To prevail on their ERISA claims, the

Class must show that each Defendant failed to comply with his, her or its duties under

ERISA, a daunting undertaking considering the uncertainty in this evolving area of the

law.  Defendants did and would likely continue to present a number of defenses that have

been upheld by some courts as preventing ERISA recovery on behalf of a plan's

participants.  These include: 1) that, as a matter of law, ADC stock was not an

"imprudent" plan investment; 2) that Defendants did not function as ERISA fiduciaries

---

[6] The context of this statement was a bankruptcy settlement, but the Eighth Circuit has recognized that the standards for approval of bankruptcy and class action settlements are fundamentally the same.  See *Van Horn, supra* at 607.

with regard to Plan investments in ADC stock; 3) that Plaintiff failed to plead or prove

that ADC and the Individual Defendants breached their fiduciary duty to monitor their

alleged appointees; 4) that Defendants breached their fiduciary duty to disclose complete

and accurate information to Plan participants (to the extent that such a duty exists); and/or

5) that Plaintiff failed to properly state a claim for co-fiduciary liability.

Further militating in favor of settlement, other district courts have held that under

certain circumstances (such as when there are serious issues with plaintiff's ability to

prove/present a fiduciary's non-action in the face of material non-public

information/corporate malfeasance) there is no liability when fiduciaries invest in

employer securities.  There are also several Circuit decisions that decline to impose

liability for similar ERISA claims.  Many of the dismissals were premised on the fact that

the company was not facing impending collapse or sufficiently dire financial

circumstances.  *See, e.g., Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir.

2006); *Wright v. Or. Metallurgical Corp.*, 222 F. Supp 2d 1224 (D. Or. 2002), *aff'd*, 360

F.3d 1090 (9th Cir. 2004); *In re Syncor ERISA Litig.*, 410 F. Supp. 2d 904 (C.D. Cal.

2006); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006); *Crowley v.

Corning, Inc.*, 234 F. Supp 2d 222 (W.D.N.Y. 2002); *In re Duke Energy ERISA Litig.*,

281 F. Supp. 2d 786 (W.D.N.C. 2003); *In Re McKesson HBOC ERISA Litig.*, No. 00-CV-

20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002); *Hull v. Policy Mgmt. Sys. Corp.*,

No. 00-CV-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001).

Here, ADC could at least make a colorable argument that it was never threatened by imminent and certain bankruptcy (as was the case in the much-publicized corporate collapses in Enron and WorldCom), even though its stock declined significantly during much of the Class Period.  If the Court adopted the "impending collapse" standard of review regarding the Defendant-fiduciaries' conduct (over Plaintiff's objections) in ruling on soon-to-be-filed motions for summary judgment, the Settlement Class would have recovered nothing.  This is especially true here as Plaintiff and Defendants were involved in a number of running discovery disputes involving production of documents and requested alteration of the discovery/expert report schedule.  If Plaintiffs did not prevail in convincing the Court to overturn certain decisions of the Magistrate Judge (an appeal was pending before the Court as the parties' culminated their settlement efforts), they likely would have been precluded from fully utilizing – in their view – their fiduciary and ERISA damages experts, increasing the likelihood that Defendants' would prevail on a dispositive motion or at trial.

Thus, this action (1) involves claims for relief under theories of liability and recovery that are still in the process of development and (2) may have gone to trial with Plaintiff – in their view which Defendants' vigorously and effectively contested – not having an opportunity to present a full array of expert testimony.  While Plaintiff's Counsel remains confident in their ultimate ability to prove the claims asserted, and were prepared to follow through with the litigation through trial and/or appeals, the risks of the case being dismissed at the summary judgment stage, or of losing at trial, when weighed

against the immediate benefits of settlement, indicate that the Settlement is in the best interest of the Class.

### b)   Uncertainty as to Model for Damages Calculations

The Plaintiff's damages calculations relied heavily on the lead case on ERISA damages for fiduciary breach in relation to investment decisions, *Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir. 1985), in accordance with which Plaintiff analyzed not simply the loss in value of company stock, but the opportunity cost of the company stock investment as compared to the most profitable potential alternative investment to derive a maximum damages estimate.[7]  However, in negotiations concerning settlement of this case, Defendants argued vigorously against the damages asserted by Plaintiff and had provided expert reports in the litigation negating damages.  Indeed, there is little case law providing clear guidance to the proper method of calculation of damages for fiduciary breaches involving investment decisions.

In general, the calculation of "ERISA" damages is "complex, time-consuming and expensive," *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460

---

[7]  *See Donovan v. Bierwirth,* 754 F. 2d 1049, 1056 (2nd Cir. 1985)("[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these.").  Any ambiguity or uncertainty in damages is resolved against the fiduciaries.  *Id.*  In addition, unlike the securities laws, which only protect persons who purchased stock during the class period, *see*, *e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739 n.9 (1975), ERISA provides relief for the imprudent purchase and holding of stock by a plan during the class period.  *See In re IKON Office Solutions, Inc.,* 191 F.R.D. 457, 464 (E.D. Pa. 2000)("Plaintiffs correctly stress the difference between a securities fraud claim and an ERISA claim" and discussing in particular the availability of "holder claims" under ERISA).

(S.D. N.Y. 2004) ("*Global Crossing*").  Plaintiff retained experts to perform damage

calculations in advance of the mediation conducted in this matter.  However, preparations

for trial would entail a great amount of time, effort and expense.  Calculation of damages

would have to be brought through full discovery process and adjudication where the

judge, as trier of fact, can set the relevant time period when the relevant investment was

to be considered "imprudent" for the plan at issue (a factually intensive question in and of

itself).  *See Donovan*, 754 F.2d at 1057.  Damages calculations in ERISA cases like this

are, in practice, computer- and expert-intensive.  The proof invariably requires a

sophisticated computer model of the plans involved, usually tracking the assets held by

the plan and its participants, purchases and sales of the individual accounts of participants

as well as any relevant assets held, purchased and/or sold by the plan but not allocated to

its participants.  These calculations must be repeatedly performed to calculate damages

suffered by each participant's account as well as the plan as a whole.  An expert must

create the model, test it, and effectively explain it.  This sort of complexity, or the

possibilities of glitches in the model, can have unexpected results.  Thus, this type of

complexity favors early resolution.  *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735,

744 (S.D.N.Y. 1985); *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 54

(S.D.N.Y. 1993)(approving settlement and noting that damage calculations is often a

"battle of the expert, with no guarantee of the outcome")[8]; *Bonime v. Doyle*, 416 F. Supp.

---

[8] *See, e.g., PaineWebber*, 171 F.R.D. 104 at 129 (noting unpredictability of outcome of
battle of damage experts); *Warner Commc'n* , 618 F. Supp. at 744-45 ("In this battle of
experts, it is virtually impossible to predict with any certainty which testimony would be
credited, and ultimately, which damages would be found to have been caused by

1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977) (difficulty in determining

damages a factor supporting settlement).

As indicated above, the determination of ERISA damages would invariably

require the presentation of expert testimony.  However, this Court had in effect

eliminated Plaintiff's ability to provide expert testimony in support of his damages.  In

August 2005, Magistrate Judge Noel ruled that Plaintiff could not supplement his

damages expert's report to be based upon discovery that was produced after the Plaintiff

was obligated to disclose his expert in the case.  Although Plaintiff argued that 90% of

Defendants' document production (amounting to well over 130,000 pages of documents)

was produced after the expert disclosure deadline, Magistrate Judge Noel ruled that

Plaintiff could not supplement his damages expert's report.  These reasons, like the

others, plainly militate in favor of settlement.

**4.     Complexity, Expense, and Likely Duration of Litigation all Weigh in
         Favor of Settlement**

ERISA fiduciary breach claims have four major components, requiring different

types of proof.  In essence, one must prove, first, that each defendant is a fiduciary;

second, that each fiduciary defendant breached a duty; third, that the breaches caused

damage; and fourth, the amount of damages which are attributable to the fiduciary

breaches.  These matters can be difficult to prove, especially as to individuals who did

---

actionable, rather than the myriad nonactionable factors such as general market
conditions.").  *See also In re Cendant Corp. Litig*., 264 F.3d 201, 239 (3d Cir. 2001)
("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee
whom the jury would believe"); *U.S. v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d

not have named fiduciary obligations in regard to plan investments.  At best, organizing the proof, deposing all the hands-on fiduciaries and various professional employees performing work for the Plans, as well as retaining experts on fiduciary practice, accounting, ERISA, and damages are unquestionably both difficult and expensive.

Further, Plaintiff would have to establish that ADC stock was an unsuitable investment for participants because of ADC's business decisions and conduct, in a context in which there have been no securities restatements, accounting fraud, or criminal accusations.  Certainly, a plan investment offering can become imprudent for a variety of reasons other than securities fraud.  *See*, *e.g., Pa. Fed'n, Bdh. Of Maint. Of Way Employees  v. Norfolk Southern Co.,* No. 02-CV-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) (same).  However, it is also true that proof of imprudence in the absence of – at the least – acknowledged accounting improprieties, suggests the need for expert testimony.  Establishing both the imprudence and the appropriate fiduciary response to it would be extremely complicated and also costly.[9]  Each of these expenses, as well as some compensation for the attorney time expended on these issues of proof, ultimately would reduce any judgment.

This case is a strong one, but not a simple or an obvious one.  Its legal and factual complexity would make it expensive to litigate, and if fully litigated, it could take years

Cir. 1972) (jury under no obligation to accept as completely true testimony of any expert witness).

[9]  For example, in the *IKON ERISA* litigation, plaintiffs' counsel's out-of-pocket costs, primarily for experts, through discovery but not trial, amounted to $1,774,879.16. Plaintiffs' Reply Memorandum in Support of Application for Fees and Expenses at 6, *Whetman v. IKON,* E.D. Pa. No. 00-87, MDL No. 1318 (9/20/02).

to resolve through trial and possible appeals.  Indeed, given the unsettled state of the law, the Defendants would have every incentive to appeal an adverse result.  The Settlement, which has been negotiated through mediation with a highly skilled and experienced mediator, presents the opportunity for a guaranteed benefit to the Class with relatively limited costs and fees incurred.  Settling the case now, before millions of more dollars are spent on costs and fees by both sides, will result in an enormous savings of time and money to the parties, the Class, and the Court.  *See, e.g., In re Ikon, supra* (finding that the complexity and duration of litigation of similar breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement).  The second factor to consider in respect to this settlement – complexity, expense, and the probable duration of litigation – therefore strongly militates in favor of approval.

### 5. The Settlement is being thoroughly vetted by an Independent Fiduciary

Another factor the Court should take into consideration when evaluating this creative and extensively negotiated Settlement is the fact that a qualified and independent fiduciary, retained by the Plan, has studied the Settlement's terms and has approved it.[10] Courts evaluating settlements of similar claims have cited with approval independent fiduciary review of a settlement's terms.  *See, e.g., Global Crossing*, 225 F.R.D. at 462

---

[10] The independent fiduciary has approved the elements of this settlement, but intends to provide further input and advice concerning the appropriateness of Plaintiff's counsel's fees based upon counsel's application for attorney fees, which will be filed simultaneously with this memorandum.

(noting that such review helps to drastically reduce "the likelihood of a collusive settlement between defendants and plaintiffs' lawyers at the expense of the plaintiff class[]").

As noted in the Settlement, the parties agree that they will comply with the terms of the Department of Labor's Exemption for the "Release of Claims and Extensions of Credit in Connection with Litigation," PTE 2003-39 (68 Fed. Reg. 75632 (Dec. 31, 2003)).  To do so, the Retirement Committee of the Plan, by agreement of Plaintiff's counsel, has retained U.S. Trust to serve as an independent fiduciary.  As noted above, U.S. Trust has provided a preliminary report approving the elements of the Settlement.

**6.    No Class Member has Objected to the Settlement Terms or the Award of Attorneys' Fees and Expenses**

As required by the Settlement Agreement and the Court's July 14, 2006 Preliminary Approval Order, Plaintiff caused the mailing of a detailed Individual Notice to approximately 9,264 members of the class at their last know address, and posted said notice on the web site for the case, www.adcerisasettlement.com.

Over 10,000 notices were mailed, yet no one lodged an objection to the ERISA 401(k) settlement by the required date, September 12, 2006.  The lack of objections favors approval of the settlement.  *See*, *e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999)(where the fact that fewer than 4% of the class objected was considered favorable to approval of a settlement)[11]; *see also In re Michael Miklen &*

---

[11] The Eighth Circuit has gone so far as to state that a settlement may be approved over a significant percentage of objections from the class members.  *Van Horn v. Trickey,* 840

*Assoc. Sec. Litig.,* 150 F.R.D. 46*; In re Warner Commc'n Sec. Litig.,* 618 F. Supp. 735 (S.D.N.Y. 1985*), aff'd,* 798 F.2d 35 (2d Cir. 1986).  Plaintiff did not receive any objections to this Settlement, a factor which strongly favors approval.

### 7.    The Risk of Maintaining Class Action Status Throughout the Trial

As the Court has only preliminarily certified a class in this action, Plaintiff seeks final certification of a class for purposes of settlement.  Absent the Settlement, Plaintiff is confident that class action status, while not strictly required for this type of ERISA claim, would have been obtained and maintained throughout the trial.  Plaintiff seeks plan-wide relief as a result of breaches of fiduciary duty that caused the Plan, and indirectly the Class, to lose millions of dollars.  As discussed above, ample precedent exists for class certification in comparable ERISA cases.

Despite this wealth of precedent, Defendants have indicated they would oppose certification in the absence of the Settlement, based on alleged individual issues, such as reliance, or perhaps based on the theory that the damages sought are in fact individual monetary losses not recoverable under ERISA §502(a)(2) or (a)(3).  *Cf. In re Ikon*, *supra* (noting risk of decertification of plaintiffs' ERISA class based on defendants' argument, disputed by plaintiffs, that the relief sought by plaintiffs is individual monetary relief not afforded by ERISA).  Efforts to obtain certification of similar classes in other cases, including the *In re Enron Corp. ERISA Litigation*, have been vigorously opposed.

---

F.2d 604, 606 (8th Cir. 1988) (citing *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1215-16 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979)).  Here, there are none.

**8.      Structural Changes to the Plan Provide Substantial Value**

The Settlement includes two parts: a cash component of $3,250,000, and the implementation of significant and important structural changes to the Plan.  These structural changes include: (1) ADC will retain the services of an Independent Advisor to advise the Plan's ADC Retirement Committee regarding the ADC Stock Fund, or will retain the services of an independent (third party) fiduciary, in lieu of an independent advisor, with respect to the ADC Stock Fund for three years; and (2) ADC, at its own expense, will provide fiduciary training for the Plan administrator and the ADC Retirement Committee on an annual basis for three years.  As explained herein, the proposed relief provides a substantial benefit to the Class and strongly diminishes the likelihood that analogous litigation will need to be brought forward on behalf of the Plan in the future.

**9.      The Parties Reached Settlement After Extensive Discovery**

This Settlement came at the conclusion of fact discovery and after Plaintiff obtained and reviewed hundreds of thousands of pages of documents regarding the Plan and its performance, as well as non-public data regarding the Plan's investment in ADC stock.  Plaintiff's Counsel conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Complaint, and the operations and administration of the Plan.  This investigation included, among other acts, conducting individual interviews with Plan participants and employees, researching ADC, reviewing numerous documents pertaining to the Plan, its operation, and underlying events, and

analyzing potential damages.  Plaintiff's counsel also sought and retained four experts to review the areas of accounting, ERISA, fiduciary behavior, and damages that were applicable to Plaintiff's claims, as well as the benefits to the Class of the proposed settlement.

Finally, Plaintiff's Counsel engaged in significant motion practice with extensive briefing on the factual and legal issues raised by Defendants in their Motions to Dismiss and other pleadings, engaged in an arduous discovery process involving multiple motions and arguments before the Court, and fully developed their pursuit of class certification through motion practice.

Clearly, the parties engaged in hard-fought litigation in this case for over three years.  Plaintiff first brought his claims in May 2003.  Throughout the ensuing three-year period, defendants denied the legitimacy of Plaintiff's claims and continue to deny each of the allegations of wrongdoing in the Complaints.  Plaintiff has every reason to believe that, should this litigation continue, Defendants would continue to deny liability in this matter and vigorously defend their position, through all appellate levels.  Such continuous denial would be expensive, time consuming, and waste assets which would be  more appropriate to include in this Settlement and immediately provide to Plan participants, who need the recovery now, not years later.  The contentious litigation and discovery conducted in this case thus far have, in Plaintiff's view, provided sufficient information to make an informed decision about Settlement.

As set forth above, all prerequisites for final approval of the settlement, approval of the notice plan, and conditional certification of the Settlement Class have been met. In short, the proposed Settlement should be finally approved and judgment entered based upon the Settlement's terms.

Plaintiff submits that the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in this District; especially one involving claims implicating alleged breaches of fiduciary duty regarding pension plan investment in employer securities, a rapidly developing area of the law. Further, Plaintiff firmly believes that certification of a non-opt-out settlement class is clearly appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure and the proposed notice plan more than meets the requirements of due process.

Settlement was not reached until after: 1) Defendants' Motion to Dismiss was fully briefed, argued and denied, 2) full fact discovery occurred, 3) experts were retained and utilized, 4) a class certification motion was filed, briefed, argued and partially decided, and 5) numerous discovery-related motions and appeals were filed and briefed. Each term and detail of the Settlement was the product of spirited and extensive arms-length negotiations, and with the assistance of a highly skilled and experienced mediator. Additionally, the Settlement was thoroughly vetted by an Independent Fiduciary, U.S. Trust, which has voiced its preliminary approval. Moreover, the approved class notice process undoubtedly satisfies the requirements of due process -- the individual and web based forms of notice used are consistent with the forms of notice utilized in analogous actions.

**C.      The Court Should Certify the Settlement Class for Final Approval**

Plaintiff, pursuant to the Settlement Agreement, seeks certification of the

following class for settlement purposes only:

> All persons who were participants or beneficiaries in the Plan
> at any time between February 24, 2000 and October 26, 2005
> and whose accounts included investments in ADC stock or
> the ADC Stock Fund (excluding Defendants).

Additionally, the parties stipulate to the conditional amendment of the pleadings to

allow Michael Anderson to be a named plaintiff and class representative for settlement

purposes only.

Plaintiff respectfully submits to the Court that every requirement for certification

under Fed. R. Civ. P. 23 is met in this case.

Moreover, the class action mechanism sets forth detailed procedures which

enhance the organization and manageability of a Plan-wide ERISA claim while

preserving due process for all Plan participants.  Thus, certification of a settlement class

here is desirable and convenient for both parties and the Court.

In practical fact, class certification in cases of this nature is common and adds to

the certainty of settlement, as demonstrated by similar cases in numerous federal courts.

*See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 308 (3d

Cir. 1998), *aff'd in part, rev'd in part sub nom. on other grounds*, 278 F.3d 175, (3d. Cir.

2002) (certifying class for settlement purposes in ERISA class action); *In re IKON Office

Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000)(certification granted after contested

hearing); *Nelson v. IPALCO Enters., Inc.*, No. 02-CV-477, 2003 WL 23101792 (S.D. Ind.

Sept. 30, 2003) (same); *In re Providian Fin. Corp. ERISA Litig.*, No. 01-CV-5027, 2003

US. Dist. LEXIS 26983 (N.D. Cal. June 30, 2003) (certification as part of settlement);

*Kolar v. Rite Aid Corp.,* No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar.

11, 2003); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545-546 (D. Mich. 2004); *In*

*re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786

(S.D.N.Y. Oct. 4, 2004); *Reinhart v. Lucent Tech., Inc.*, 307 F. Supp. 2d 633 (D.N.J.

2004); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

## 1.     The Requirements of Class Certification

Plaintiff's claims clearly meet the requirements for certification under Fed. R. Civ.

P. 23.  Judge Tunheim of this District recently reviewed the criteria for class certification:

> The Court assumes a familiarity with the requirements of class certification
> and only briefly reviews those requirements.   Federal Rule of Civil
> Procedure 23 sets forth the requirements for class action certification.  For a
> class to qualify for certification, each of the requirements of Rule 23(a)
> must be satisfied. Rule 23(a) requires the proponents of certification to
> establish each of the following: (1) that the members of the proposed class
> are so numerous that joinder of the individual claims would be
> impracticable; (2) that there is commonality among issues of law or fact
> raised by the class members; (3) that the claims of the proposed class
> representatives are typical of the claims of the class members; and (4) that
> the proposed class representatives will adequately represent the interests of
> the class.
>
> If all requirements of 23(a) are satisfied, the class proponents must also
> satisfy one of the three requirements of 23(b).  Rule 23(b) identifies three
> different types of class actions, and the proposed class must fit into one of
> those three "types."

*In re St. Jude Med., Inc.,* No. 01-MDL-1396, 2004 U.S. Dist. LEXIS 149 at *5-6 (D.

Minn. Jan. 5, 2004).  This Court has broad discretion to determine whether the class

should be certified.  *Darms v. McCulloch Oil Corp.,* 720 F.2d 490 (8th Cir. 1983).

Using that discretion, courts interpret Rule 23 liberally to effectuate its policy of fostering the class-wide resolution of similar claims against a common defendant. *See, e.g., Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977) ("We are committed to the proposition that Rule 23 should be liberally construed…"); *Buchholtz v. Swift & Co.*, 62 F.R.D. 581, 595 (D. Minn. 1973) ("[A]s remedial legislation, Rule 23 has generally been accorded a liberal interpretation."); *see also* 3B Moore's Federal Practice P 23.02[4], at 23-70 and 71 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir. 1968) ("Any type of civil claim, federal or state, may be maintained as a class action in federal court, and Rule 23 should be liberally construed and applied."); *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968); *Caroline C. v. Johnson*, 174 F.R.D. 452 (D. Neb., 1996); *Weinberger v. Thornton*, 114 F.R.D. 599, 602 (S.D. Cal. 1986).

Consistent with these principles, litigation closely paralleling this case has been certified for class status on numerous occasions. *See*, *e.g.*, *In re: WorldCom ERISA Litig.,* 2004 U.S. Dist. LEXIS 19786*; In re: Global Crossing ERISA Litig.;* 225 F.R.D. 436, *Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 22, 2001); *Bublitz v. E.I. duPont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397-98 (E.D. Pa. 2001); *In re IKON Office Solutions, Inc., supra at* 466 (E.D. Pa. 2000); *Clauser v. Newell Rubbermaid, Inc.*, No. 99-CV-5753, 2000 U.S. Dist. LEXIS 10631 (E.D. Pa. July 31, 2000); *White v. Sundstrand Corp.*, No. 98-CV-50070, 1999 U.S. Dist. LEXIS 15091 (N.D. Ill. Sept. 30, 1999); *Bunnion v. Consol. Rail Corp.*, No. 97-CV-4877, 1998 U.S. Dist. LEXIS 7727 (E.D. Pa. May 14, 1998); *Kane v. United Indep. Union Welfare Fund*,

No. 97-CV-1505, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 23, 1998); *Feret v.*

*Corestates Fin. Corp.,* No. 97-CV-6759, 1998 U.S. Dist. LEXIS 12734 (E.D. Pa. Aug.

18, 1998); *Montgomery v. Aetna Plywood, Inc.*, No. 95-CV-3193, 1996 U.S. Dist. LEXIS

4869 (N.D. Ill. April 15, 1996); *Atwood v. Burlington Indus. Equity, Inc.*, 164 F.R.D.

177, 179 (M.D.N.C. 1995); *Schutte v. Maleski,* No. 93-CV-0961, 1993 U.S. Dist. LEXIS

8332 (E.D. Pa. June 18, 1993); *Gruby v. Brady*, 838 F. Supp. 820, 827 (S.D.N.Y. 1993);

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479

(S.D. Ga. 1991); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792

(S.D.N.Y. 1990) *aff'd in part, rev'd in part on other grounds*, 974 F.2d 270 (2d Cir.

1992).

As these authorities teach, plan-wide claims against ERISA fiduciaries are

textbook examples of proper class certification.  As such, the proposed Class satisfies

each requirement of Rule 23(a), (b)(1) and (b)(2).

### 2.     The Proposed Class Meets the Requirements of Rule 23(a)

Rule 23(a) provides four prerequisites for certification:

One or more members of a class may sue or be sued as representative
parties on behalf of all only if (1) the class is so numerous that joinder of all
members is impracticable, (2) there are questions of law or fact common to
the class, (3) the claims or defense of the representative parties are typical
of the claims or defenses of the class, and (4) the representative parties will
fairly and adequately protect the interests of the class.

The first two of these requirements are intended to identify so-called "natural"

class actions – those in which joinder of all interested parties is impracticable and

those presenting at least one common issue of fact or law.  1 Herbert B. Newberg and

Alba Conte, *Newberg on Class Actions* § 3.01, at 3-4 (2004).  The third and fourth requirements define the desired attributes of the class representative. *Id.*

> a)      **The class is so numerous that joinder of all members is impracticable.**

This class is estimated by the company (as Plan Administrator) to contain approximately 9,264 members.  Because some potential duplications were unable to be confirmed, Notice of the proposed settlement went out to over 10,000 persons.  In *Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982), the Eighth Circuit cited with approval cases certifying classes of sixteen and eighteen members on grounds, in part, that joinder was impracticable. 688 F.2d at 561 (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members); *Crenshaw v. Maloney*, 13 Fair Empl. Prac. Cas. (BNA) 154, 155 (D. Conn. 1976) (sixteen class members)).  In *Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971), the Eighth Circuit held that a class of twenty was sufficient to satisfy the numerosity requirement.  There is no doubt that this proposed class is sufficiently numerous to support class treatment.

> b)      **There are questions of law or fact common to the class.**

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002), *citing Gruby v. Brady, supra.*  Courts in this District have analyzed commonality in the following

manner:

> All such questions need not be common to every member of the class. *See Paxton v. Union National Bank,* 688 F.2d 552, 561 (8th Cir. 1982); . . . 23(a)(2) may be satisfied where the course of conduct leading to a cause of action affects all class members and at least one of the elements for that cause of action is shared by the class members. See *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir. 1993) (finding commonality despite the fact that four different pension plans were involved); *Lockwood,* 162 F.R.D. at 575 (citing Newberg, Class Actions § 3.10 at 3-50). . . Commonality exists if "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton,* 688 F.2d at 561 (citation omitted); see *also Coley,* 635 F.2d at 1378.

*Smith v. United Healthcare Servs.,* No. 00-CV-1163, 2002 U.S. Dist. LEXIS 2140, 9-11 (D. Minn. Feb. 5, 2002)(class certification granted on ERISA claim where there were over one million subscribers affected by an allegedly improper billing practice and interpretation of plan language applied equally to similarly situated subscribers).

Actions brought under ERISA §502(a)(2) are particularly well suited to class treatment, because the plaintiffs stand in a representative role, seeking relief for the entire plan. The fundamental claims and defenses pertain to the defendants' conduct as fiduciaries, and such claims are generally suitable for class certification. See *Advisory Committee's Note* (1966 Amendment) Fed. R. Civ. P. 23(b)(1)(B). As the Court stated in *In IKON Office Solutions, Inc., supra,* at 465, "[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."

Here, Defendants did not challenge the commonality, but Plaintiff alleged that common issues of law and fact included:

- Whether the Defendants were fiduciaries of the Plan and/or the Plan

participants;
- Whether Defendants breached their fiduciary duties;
- Whether the Plan or the Plan participants were injured by such breaches; and
- Whether the Class is entitled to damages and injunctive relief.

Because common issues of law and fact are presented, Rule 23(a)(2) is satisfied.

### c) The claims of the proposed class representatives are typical of those of the class

Rule 23(a)(3) requires that proposed class representatives present claims typical of other class members --in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). The Eighth Circuit "long ago defined typicality as requiring 'a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff.'" *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990)(citations omitted).

In the Eighth Circuit, "the 'burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff . . . [and] this typicality is not altered by the different mortgage instruments held by class members. The relief sought in the action is the same regardless of the amount of overage in any particular account.' *Farthing v. United Healthcare of the Midwest, Inc.*, 2000 U.S. Dist. LEXIS 21995, 11-12 (D. Mo. 2000)(quoting *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995)). In addition, there is no requirement that the circumstances of the named Plaintiff and the potential class be entirely identical:

> "The claims or potential defenses need not be identical, and typicality usually will be satisfied if the claims or defenses of the representatives and the class stem from the same events or rest on the same legal theories. When the claims or defenses of the representatives and the class are based on the same course of conduct or legal theory, it is thought that the representatives will advance the interest of the class members by advancing

his or her own interests."

*In re Control Data Corp. Sec. Litigation,* 116 F.R.D. 216, 220 (D. Minn., 1986) (citations

omitted).  See *also Becher v. Long Island Lighting Co.,* 164 F.R.D. 144, 151 (E.D.N.Y.

1996) (holding, in an ERISA breach of fiduciary class action, that "[w]hen the same

unlawful conduct was directed at both the named plaintiff and the class he seeks to

represent, the typicality requirement is usually met 'irrespective of minor variations in the

fact patterns underlying individual claims.'") [Citations omitted]  Likewise, differences in

damages among the class members will not defeat typicality.  *In re St. Jude Medical,*

*supra,* at 24-25.

The claims of Michael Anderson as the class representative result from the same

events and involved in the litigation.  The claims also rely upon the same legal theories

for all class members and, therefore, satisfy this typicality requirement.

> ### d)     *Michael Anderson has fairly and adequately protected the interest of the Class.*

"The adequacy of representation requirement is met when 'the representative

parties will fairly and adequately protect the interests of the class.'  Fed. R. Civ. P.

23(a)(4); [Citations omitted]  In making this determination, the Court must consider (1)

whether the representatives and their attorneys are able and willing to prosecute the

action competently and vigorously, and (2) whether each representative's interests are

sufficiently similar to those of the class that it is unlikely that their goals and viewpoints

will diverge."  *Mathers v. Northshore Mining Co.,* 217 F.R.D. 474 (D. Minn. 2003).  As

to the competency of counsel and the vigor with which they have pursued this case, those

matters are addressed below in connection with discussion of the actual settlement terms.
Plaintiff's Counsel have extensive experience in representing plaintiffs in ERISA class
action litigation, and class action litigation generally,  (for a fuller discussion with case
references, please see Plaintiff's Motion for Award of Attorney's Fees and
Reimbursement of Expenses filed simultaneously with this memorandum).  Therefore,
this prong of the adequacy requirement also is clearly established.  See, *e.g., Thomas v.
SmithKline Beecham Corp.,* 201 F.R.D. 386 at 396 (finding class counsel adequate based
on the plaintiffs' attorneys' "extensive experience litigating class actions and ERISA
actions").

The plan-wide nature of the relief sought by Michael Anderson clearly unites his
interest with that of absent Class members.  This point was made cogently in *Gruby,
supra,* at 827, where the court rejected defendants' argument that ERISA class members'
interest diverged since all members sought the same "make-whole" relief claimed by the
named plaintiffs for breach of the defendants' fiduciary duties.  The court noted further
that "as any recovery under section 502(a)(2), 29 U.S.C. § 1132(a)(2) goes to the Fund as
a whole, and as Fund participants may bring an action only in a representative capacity
on behalf of the entire Fund, the proposed class must include all Fund participants."  *Id.
(citing Russell,* 473 U.S. at 142, n.9)[12].  The adequacy requirement of Rule 23(a) is

---

[12] *In SmithKline Beecham, supra,* at 396, the court explained: (continued on following
page)

> [B]ecause the named plaintiffs are challenging the same unlawful conduct
> and seeking the same relief as the rest of the class, I find that the interests
> of the named plaintiffs are sufficiently aligned with those of the class

satisfied in this case.

**3.      The Class satisfies the criteria of Rule 23(b)(1) and (b)(2)**

Because Plaintiff has satisfied the requirements of Rule 23(a), this Court should

certify the Class if it satisfies one or more of Rule 23(b)'s three subsections.  As often has

been noted, the additional requirements of Rule 23(b) overlap considerably with those of

Rule 23(a), and with each other.  *Newberg on Class Actions* § 4.01 (2004).

**a)      *Certification under Rule 23(b)(1)(A) and (b)(1)(B)***

This Class is appropriate for certification as a non opt-out class under 23(b)(1) and

(b)(2).  In fact, given the unique representative nature of a breach of fiduciary duty action

under ERISA, some courts have held that an ERISA breach of fiduciary action may be

certified ***only*** as a non opt-out class under (b)(1) or (b)(2).  See, *e.g., Piazza v. Ebsco*

*Indus., Inc.,* 273 F.3d 1341, 1352-53 (11th Cir. 2001) (rejecting certification of a claim

alleging breach of fiduciary duty brought under ERISA § 409 on behalf of the plan under

Rule 23(b)(3), and remanding for findings consistent with its ruling that such actions

should be maintained under Rule 23(b)(1) or (b)(2)).

Under Rule 23(b)(1), a class may be certified if:

---

members to satisfy the first prong of the adequacy of representation
requirement.  In particular, I noted that the right to relief of the named
plaintiffs, like that of the absent class members, depends on demonstrating
that the defendants violated the terms of the plans, violated provisions of
ERISA, and breached their fiduciary duties.

See *also Kane v. United Independent Union Welfare Fund,* 1998 WL
78985, at *8 (finding adequacy in ERISA case; "plaintiffs seek to have the
fiduciaries 'personally restore to the Fund any losses incurred.' . . . The

(1)  the prosecution of separate actions by or against individual members of the class would create a risk of:

  (A)  inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

  (B)  adjudications with respect to individual members of the class whish would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Thus, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions, Inc.*, *supra at* 466.  Litigation comparable to that before the Court has been certified for class status under both subsections.

As noted by a Michigan district court in a similar ERISA class action, *In re CMS Energy ERISA Litigation*, *supra*, at 17-20 (D. Mich., 2004):

> The court agrees with plaintiffs that the claims in this litigation, alleging defendants' breaches of fiduciary and co-fiduciary duties through their 1) failure to prudently manage Plan assets, 2) failure to provide complete and accurate information to participants and beneficiaries, and 3) failure to monitor Plan fiduciaries, are brought by definition in a representative capacity, as damages awarded would inure to the plan as a whole.  See *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997).  This fact demonstrates that plaintiffs' claims "as a practical matter" would "be dispositive of the interests of the other members not parties to the adjudication." Fed. R. Civ. P. 23(b)(1)(B).
> ...
>
> Here, as in the *Ikon* case, failure to certify could risk inconsistent rulings concerning fiduciary status of the defendants and materiality of alleged omissions. *Ikon*, 191 F.R.D. at 466.  The court's ruling, therefore, is to grant plaintiff's requested class certification, under both 23(b)(1)(A) and

named plaintiffs' interests are the same as those of the absentee class members: all seek to increase the value of the Fund").

(b)(1)(B).

*See also Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004; *Koch v. Dwyer*, *supra*;

*Thomas v. SmithKline Beecham Corp., supra at* 397 (E.D. Pa. 2001); *In re IKON Office*

*Solutions, Inc., supra; Bunnion v. Consolidated Rail Corp.*, *supra; Kane v. United*

*Independent Union Welfare Fund*, *supra; Feret v. Corestates Fin. Corp.,* 1998 U.S. Dist.

LEXIS 12734; *Gruby v. Brady*, *supra* at 827; *Specialty Cabinets & Fixtures, Inc. v. Am.*

*Equitable Life Ins. Co.*, *supra,* at 479 (S.D. Ga. 1991); *Godshall v. Franklin Mint Co*.,

2004 U.S. Dist. LEXIS 23976 (E.D. Pa., 2004). See also *Advisory Comm. Notes to 1996*

*Amendment of Fed. R. Civ. P. 23(b)(1)(B)* (stating that certification under 23(b)(1)(B) is

appropriate in cases charging breach of trust by a fiduciary to a large class of

beneficiaries).

    Likewise, certification under Rule 23(b)(1)(A) and (B) is appropriate here.

       ***b)     Certification under Rule 23(b)(2)***

    A class may be certified under Rule 23(b)(2) if "the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole." Fed. R. Civ. P. 23(b)(2).  Injunctive or declaratory relief is not

"appropriate" when the "final relief relates exclusively or predominantly to money

damages." Fed. R. Civ. P. 23(b)(2), Advisory Comm. Notes.

> The Eighth Circuit has cited with approval Wright & Miller's statement that
> "if the Rule 23(a) prerequisites have been met and injunctive or declaratory
> relief has been requested, the action usually should be allowed to proceed
> under subdivision (b)(2)." *DeBoer*, 64 F.3d at 1175.   A request for
> monetary relief is an insufficient basis for refusing to certify a class action

under Rule 23(b)(2).  See *id.*; *Bradford v. Agco Corp.*, 187 F.R.D. 600, 605 (W.D. Mo. 1999) (holding that ERISA plaintiffs' request for monetary relief accompanying request for injunction did not preclude class certification under Rule 23(b)(2)).  Other courts have certified ERISA classes pursuant to Rule 23(b)(2) where the plaintiffs alleged a course of conduct generally applicable to the class and sought monetary relief secondary to their request for declaratory and injunctive relief.

*Smith v. United Healthcare Servs.*, *supra* (citations omitted).

In the instant case,  the relief, although some of it will take the form of money payments, is fully injunctive under the terms of ERISA, and the conditions for Rule 23(b)(2) certification are met.

In this case, the proposed class easily satisfies all the requirement of Rules 23(a), (b)(1) and (b)(2).  After notice and opportunity to object, no one has thus far contested the propriety of class certification.  Plaintiff, therefore, respectfully asks the Court to grant final class certification pursuant to Fed. R. Civ. P. 23(e) in conjunction with final approval of settlement.

### 4.     Rule 23(g)

In addition to the other requirements outlined above, Rule 23 requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class.  Class Counsel easily meet the dictates of Rule 23(g).

Here, as presented in detail above, the Settlement was achieved by Class Counsel who include some of the preeminent ERISA class action attorneys in the country with years of experience in ERISA law and in prosecuting and trying complex actions.  Class Counsel's experience and skill were demonstrated by the effective prosecution of this

action, including the substantial settlement entered into with Defendants.  The result achieved is the clearest reflection of counsel's skill and expertise.  *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *see also Ikon Office Solutions Sec. Litig*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("the most significant factor in this case is the quality of representation, as measured by the 'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'").

As the court recognized in *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities."  In the instant matter, due to the complexities of the Lawsuit and the zealous representation by Defendants, Class Counsel's abilities were tested and clearly demonstrated.  Indeed, as described above, Class Counsel has substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted in this action.  Hence, Class Counsel's extensive efforts in prosecuting this case, in combination with their in-depth knowledge, satisfy Rule 23(g).

Therefore, in sum, for purposes of effectuating this Settlement, this action should be certified as a class action under Rules 23 of the Federal Rules of Civil Procedure.

## V.    CONCLUSION

The proposed Settlement is fair, reasonable and adequate, and provides substantial benefits to the Plan participants.  The Settlement is the result of extensive arms-length negotiations by the parties through a highly skilled and experience mediator, and provides substantial benefits to the class of Plan participants and fully, fairly, and favorably resolves Plaintiff's claims.  This is evidenced by the fact that not one of the over 9,000 Plan Participants has objected to the Settlement terms.

For these and the other foregoing reasons detailed above, Plaintiff respectfully requests that the Court certify the Class for Settlement purposes, appoint Michael Anderson as its representative, and approve the Settlement on a final basis.

Dated: September 27, 2006                    Respectfully Submitted,

**EMERSON POYNTER LLP**

By:*/s  Scott E. Poynter*

Scott E. Poynter
John G. Emerson
The Museum Center
500 President Clinton Ave, Suite 305
Little Rock, AR 72201
Ph.  501.907.2555
Fx.  501.907.2556

**SCHIFFRIN & BARROWAY, LLP**
Joseph H. Meltzer
Edward W. Ciolko
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056

**Co-Lead Counsel for Plaintiff**

**HEAD, SEIFERT & VANDER WEIDE**
Vernon J. Vander Weide (No. 112173)
Thomas V. Seifert (No. 98863)
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: (612) 339-1601
Fax: (612) 339-3372

**Liaison Counsel for Plaintiff**